## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN LAUTZENHEISER, derivatively on behalf of COGNIZANT TECHNOLOGY SOLUTIONS CORP., | : |
|        Plaintiff, | :    Civil Action No. 17-1248 |
| v. | : |
| ZEIN ABDALLA, MAUREEN BREAKIRON-EVANS, FRANCISCO D'SOUZA, JOHN N. FOX, JOHN E. KLEIN, LEO S. MACKAY, JR., LAKSHMI NARAYANAN, MICHAEL PATSALOS-FOX, ROBERT E. WEISSMAN, and THOMAS M. WENDEL, | :    JURY TRIAL DEMANDED |
|        Defendants, | : |
| and | : |
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, | : |
|        Nominal Defendant. | : |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff John Lautzenheiser ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (this "Complaint"). Plaintiff alleges the following based upon a due investigation of the relevant facts, including a review of United States Securities and Exchange Commission ("SEC") filings by Nominal Defendant Cognizant Technology Solutions Corporation ("Cognizant" or the "Company"), as well as reports, related litigation, press releases and other public statements issued by the Company.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought for the benefit of Cognizant against certain current and former members of its Board of Directors (the "Board") and executive officers seeking to remedy Defendants' (as defined below) breaches of fiduciary duties and other misconduct from February 25, 2016 to the present (the "Relevant Period") which have caused substantial losses and other damages to the Company, as further described in detail herein. Defendants breached their fiduciary duties by causing and/or knowingly allowing the Company to engage in potential violations of the Foreign Corrupt Practices Act ("FCPA").[1]

2.      According to the Company's SEC filings, Cognizant considers itself the leading provider of information technology ("IT"), consulting and business process services. Cognizant is based in Teaneck, New Jersey but about three-quarters of its employees are in India and a substantial portion of the Company's assets are located in India.

3.      Throughout the Relevant Period, Defendants engaged in an illegal scheme, made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects, and performance. Defendants were well aware of the true facts regarding the Company's financial health, business, operations and prospects. Accordingly, Defendants had a fiduciary duty to install and maintain internal controls in order to comply with and prevent violations of the FCPA. The Company is currently facing significant

---

[1] The FCPA was enacted for the purpose of making it unlawful for certain classes of persons and entities to make payments to foreign government officials to assist in obtaining or retaining such persons or entities' business. The FCPA also requires companies whose securities are listed in the United States to meet its accounting provisions. These accounting provisions, which were designed to operate in tandem with the anti-bribery provisions of the FCPA, require corporations covered by the provisions to: (a) make and keep books and records that accurately and fairly reflect the transactions of the corporation and (b) devise and maintain an adequate system of internal accounting controls. Furthermore, charitable contributions can violate the FCPA if they benefit foreign officials personally and are intended to obtain or retain business or gain an unfair advantage.

legal and financial exposure because of Defendants' illegal actions. Plaintiff brings this action on behalf of the Company to, among other things, recover damages including but not limited to, fees, costs, loss of goodwill and business opportunities, as well as loss in market value and shareholder equity, caused by the Individual Defendants' unlawful courses of conduct and breaches of fiduciary duty.

4.      In blatant disregard of and in breach of their fiduciary duties, Defendants misrepresented and failed to disclose adverse facts, which were known to Defendants or recklessly disregarded effective internal controls, which ultimately caused the Company: (1) to engage in illicit business practices that exposed the Company to risks of criminal and civil liability and as a result of improper payments made by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India; (2) to falsely certify that the Company had adequate internal and financial controls; and (3) to falsely certify that it operated under strict compliance with the Company's Anticorruption Policy, which expressly prohibited agreements that violated FCPA; and (4) as a result of the foregoing, Defendants' statements about the Company's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

5.      As a result of the Board's actions, the Company has already suffered, and will continue to suffer, substantial financial damage. The Company is now threatened with serious regulatory investigations, which may result in criminal indictments and/or civil enforcement actions. An FCPA investigation can cost a company many millions of dollars in legal fees and fines, as well as years of wasted executive time in dealing with the allegations and remedying the wrongful conduct.

6.      Since the Company remains under the control and/or influence of the primary wrongdoers who: (1) have substantial conflicts of interest and/or (2) may be implicated in the commission of the illegal conduct alleged herein, Cognizant is unable to protect itself or remedy the wrongs inflicted upon it. Accordingly, this derivative action must be brought and vigorously prosecuted to protect and vindicate the rights of the Company and for restitution to the Company for, among other things, the costs and expenses that have, and will be paid, by the Company as a result of Defendants' wrongdoing.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.      This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial portion of transactions and wrongs complained of herein occurred in this District. Further, Defendants participated in board of director meetings or maintain executive offices in this District and have received substantial compensation in this District by engaging in numerous activities and conducting business in this District. Further, Cognizant maintains its principal place of business in this District.

**THE PARTIES**

**Plaintiff**

10.     Plaintiff is a current shareholder of Cognizant and has continuously held Cognizant stock during the relevant time. Plaintiff is a citizen of Massachusetts.

4

**Nominal Defendant**

11.     Nominal Defendant Cognizant describes itself a leading provider of information technology, consulting, and business process services.

12.     Cognizant is incorporated in Delaware and maintains its principal executive offices in Teaneck, New Jersey, making it a citizen of both Delaware and New Jersey for jurisdictional purposes.

13.     Defendant Zein Abdalla ("Abdalla") was elected to the Company's Board in September 2015. Abdalla is a member of the Audit and Nominating and Corporate Governance Committees.  Upon information and belief, Abdalla is a citizen of the state of New York.

14.     Defendant Maureen Breakiron-Evans ("Breakiron-Evans") was elected to the Company's Board in May 2009. She is the Chairman of the Audit Committee and is a member of the Nominating and Corporate Governance Committees.  Upon information and belief, Break-iron Evans is a citizen of Florida.

15.     Defendant Francisco D'Souza ("D'Souza") is the Company's Chief Executive Officer ("CEO") and a member of the Board. D'Souza joined the Company as a co-founder in 1994, the year it was started as a division of The Dun & Bradstreet Corporation.   Upon information and belief, D'Souza is a citizen of New Jersey.

16.     Defendant John N. Fox ("Fox") was elected to the Company's Board in December 2007. He is a member of the Company's Compensation and Nominating and Corporate Governance Committees.  Upon information and belief, Fox is a citizen of Illinois.

17.     Defendant John E. Klein ("Klein") was elected to the Company's Board in March 1998 and has served as Chairman of the Board since December 2003. He is the Chairman of the Compensation Committee and is a member of the Audit and Nominating and Corporate

Governance Committees.  Upon information and belief, Klein is a citizen of New Jersey.

18.     Defendant Leo S. Mackay, Jr. ("Mackay") was appointed to the Company's Board in September 2012. His is a member of the Audit Committee.  Upon information and belief, Mackay is a citizen of Virginia.

19.     Defendant Lakshmi Narayanan ("Narayanan") was elected to the Company's Board in December 2003 and was elected to serve as the Vice Chairman of the Board in January 2007.  Upon information and belief, Narayanan is a citizen of Texas.

20.     Defendant Michael Patsalos-Fox ("Patsalos-Fox") was elected to the Company's Board in July 2012. Patsalos-Fox serves as a member of the Company's Compensation and Nominating and Corporate Governance Committees. Upon information and belief, Patsalos-Fox is a citizen of New Jersey.

21.     Defendant Robert E. Weissman ("Weissman") was elected to the Board in May 2001. Weissman is the Chairman of the Nominating and Corporate Governance Committee and a member of the Compensation Committee. Upon information and belief, Weissman is a citizen of Florida.

22.     Defendant Thomas M. Wendel ("Wendel") was elected to the Board in June 2001 and is a member of the Audit and Nominating and Corporate Governance Committees. Upon information and belief, Wendel is a citizen of Missouri.

23.     Collectively, Defendants Abdalla, Breakiron-Evans, D'Souza, Fox, Klein, Mackay, Narayanan, Patsalos-Fox, Weissman and Wendel shall be referred to herein as "Defendants" or the "Individual Defendants."

### DEFENDANTS' DUTIES

### Fiduciary Duties of Defendants

24.     By reason of their positions as officers, directors, and/or fiduciaries of Cognizant and because of their ability to control the business and corporate affairs of Cognizant, Defendants owed Cognizant and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Cognizant in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Cognizant and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Cognizant and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     Defendants, because of their positions of control and authority as directors and/or officers of Cognizant, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Cognizant, each of the Defendants had knowledge of material non-public information regarding the Company and each was directly involved in the operations of the Company at the highest levels.

26.     To discharge their duties, the officers and directors of Cognizant were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Cognizant were required to, among other things:

     a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

     b.  Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state

7

      laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

    c.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**Cognizant's FCPA, UK Bribery Act and Anticorruption Policy**

27.    The Company has adopted an Anticorruption Policy that "applies to all of us, all of our affiliates, and our and their officers, directors, associates, business partners, and third-party representatives anywhere in the world."

28.    The Anticorruption policy is designed to prevent violations of the FCPA and other anticorruption laws or the appearance of impropriety or corruption, and to satisfy the Company's obligation to have in place procedures for monitoring, detecting, preventing and punishing any violations of the FCPA and other anticorruption laws.

## SUBSTANTIVE ALLEGATIONS

29.    Cognizant is global provider of information technology, consulting and business process services headquartered in Teaneck, N.J. Cognizant was founded in 1994 as an IT development and maintenance services arm of The Dun & Bradstreet Corporation. The Company was spun-off as an independent organization two years later.

30.    According to the Company's SEC filings, "[a] substantial portion of [the Company's] assets and operations are located in India and [it is] subject to regulatory, economic, political and other uncertainties in India." The Company's global headcount of employees is around 255,800, as of September 30, 2016, of which 75% are located in India. Cognizant also owns 12 of the 45 facilities it has in India.

31.    According to Transparency International's corruption perception index for 2016,

8

India ranked 40.[2] A country or territory's score indicates the perceived level of public sector corruption on a scale of 0 (highly corrupt) to 100 (very clean).

32.     On February 25, 2016 the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's year-end financial results and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2015. The 2015 10-K was signed by Defendants D'Souza, Klein, Narayanan, Wendel, Weissman, Fox, Breakiron-Evans, Patsalos-Fox, Mackay and Abdalla. The 2015 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant D'Souza attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

33.     The Form 10-K was false and misleading because it failed to disclose adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose or indicate that they had caused Cognizant: (1) to engage in illicit business practices that exposed the Company to risks of criminal and civil liability and as a result of improper payments made by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India; (2) to falsely certify that it had adequate internal and financial controls; and (3) to falsely certify that it operated under strict compliance with the Anticorruption Policy, which expressly prohibited agreements that violated FCPA; and (4) as a result of the foregoing, Defendants' statements about the Company's business, operations and prospects were materially false and misleading

---

[2] The 2016 index includes 168 countries and territories.

9

and/or lacked a reasonable basis in fact at all relevant times.

34.    According to the Company's SEC filings, Defendants are aware of the devastating effects of non-compliance with the FCPA and the material adverse effect of non-compliance on the Company's business and financial condition. The Company's most recent Form 10-K states the following in relevant part:

> Among other anti-corruption laws and regulations, we are subject to the United States Foreign Corrupt Practices Act, or FCPA, which prohibits improper payments or offers of improper payments to foreign officials to obtain business or any other benefit, and the U.K. Bribery Act. Violations of these laws or regulations could subject us to criminal or civil enforcement actions, including fines and suspension or disqualification from government contracting or contracting with private entities in certain highly regulated industries, any of which could have a material adverse effect on our business, results of operations and financial condition.

35.    Although the Company's internal investigation is ongoing, to date, the Board has failed, inter alia, to issue any detailed reports regarding the findings of the internal investigation. The Company has revealed in its SEC filings that "the members of senior management who may have participated in or failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position" and that "[a]dditional personnel actions have been taken with respect to other employees and further actions may be required." However, the Board has failed to identify these individuals, the specific role they played in the illegal scheme, and whether the Board will recoup any performance-based compensation paid to these individuals. Furthermore, the Company has noted in its SEC filings that it has "recently initiated additional measures to address the above deficiencies which we believe will contribute to the ultimate remediation of the material weakness" and that "[t]hese additional measures include, but are not limited to, enhanced oversight controls in the areas of procurement and accounts payable as they relate to real estate

transactions in India." There are no further details given regarding the remediation measures that

the Company has implemented to prevent the recurrence of the wrongdoing alleged herein.

### Cognizant's President Abruptly Resigns and the Company Announces
### An Internal Investigation of Possible FCPA Violations

36.     That same day, the Company filed a Form 8-K with the SEC announcing, among

other things, that the Company had launched an internal investigation into "possible violation[s]

of the U.S. Foreign Corrupt Practices Act and other applicable laws." The Form 8-K stated in

relevant part:

> The Company is conducting an internal investigation into whether certain
> payments relating to facilities in India were made improperly and in possible
> violation of the U.S. Foreign Corrupt Practices Act and other applicable laws. The
> investigation is being conducted under the oversight of the Audit Committee, with
> the assistance of outside counsel, and is currently focused on a small number of
> Company-owned facilities. The Company has voluntarily notified the United
> States Department of Justice (the "DOJ") and United States Securities and
> Exchange Commission (the "SEC") and is cooperating fully with both agencies.
> The internal investigation is in its early stages, and the Company is not able to
> predict what, if any, action may be taken by the DOJ, SEC or any governmental
> authority in connection with the investigation or the effect of the matter on the
> Company's results of operations, cash flows or financial position.

37.     In a parallel development, the Form 8-K also disclosed that on September 30,

2016, the Company announced that its long-serving President, Gordon Coburn, abruptly resigned

three days prior. The Company did not reveal the reasons for Coburn's sudden departure. Coburn

had been with the company in various executive roles since the mid-1990s and had been the

Chief Financial Officer when the Company initially went public.

38.     The Company's stock price plummeted approximately 13.5% after this

announcement and investors lost approximately $4.5 billion. Furthermore, the Company's

announcement came at a time when Cognizant represented that its current year revenue grown of

8.5% to 9.5% would be its slowest since 1996.

11

39.     According to an article published by The Times of India on October 3, 2016, entitled, *Cognizant Gags Staff, Steps Up Graft Probe*, "internal investigators were digging into laptops and key documents of senior Indian executives of the Company." The article further stated that during the course of the investigations, "laptops of several senior management executives, including some very senior official who held board positions, were seized." The article also revealed that the Company also imposed "a gag on employees from communicating and reaching out to the outside world."

40.     The next day on October 4, 2016, the Business Standard published an article entitled Cognizant Widens Bribery Probe. The article revealed that the scope of the Company's bribery investigation involving facilities in India "may widen to the involvement of its officials who locally do such transactions." The article included the Company's response that the "investigation is focused on improper payments such as building licenses, permits, etc."

41.     On November 7, 2016, the Company filed its most recent Form 10-Q with the SEC. The Company admitted that a material weakness existed as of December 31, 2015, and continues to exist in subsequent interim periods, in the Company's internal control over financial reporting. The Form 10-Q states in relevant part:

> To date, the investigation has identified a total of approximately $5.0 million in payments that may have been improper. During the three months ended September 30, 2016, we recorded an out-of-period correction related to $3.1 million of such payments that were previously capitalized that should have been expensed. The remaining $1.9 million of such payments remains under investigation. The recorded correction resulted in an increase of selling, general and administrative expenses of $3.1 million, a reduction in depreciation and amortization expense of $0.4 million, and a reduction in property and equipment, net of $2.7 million. These prior period corrections and the $1.9 million in payments under investigation were not material to any previously issued annual or any interim financial statements and are not expected to be material to the financial results for the year ending December 31, 2016.
>
> During the closing process for the third quarter of 2016, based on the results of

12

the internal investigation to date, we concluded that as of December 31, 2015 and in subsequent interim periods, we did not maintain an effective control environment. Specifically, we did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India. Such actions would be inconsistent with the standards and tone at the top to which our Board of Directors and senior management are committed and would be in violation of the Company's written code of conduct and procedures established in part to detect and prevent improper payments. Based on the results of the investigation to date, the members of senior management who may have participated in or failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

As a result of the foregoing, we have determined that a material weakness existed as of December 31, 2015, and continues to exist in subsequent interim periods, in our internal control over financial reporting. Accordingly, we have updated the previous conclusion included in Item 9A of our Form 10-K filed with the Securities and Exchange Commission on February 25, 2016 with respect to our disclosure controls and procedures and internal controls over financial reporting to conclude that our disclosure controls and procedures and internal controls over financial reporting as of December 31, 2015 were ineffective. Also, we have updated the previous conclusions included in Item 4 of our Forms 10-Q filed with the Securities and Exchange Commission on May 6, 2016 and August 5, 2016 with respect to our disclosure controls and procedures to conclude that our disclosure controls and procedures as of March 31, 2016 and June 30, 2016, respectively, were ineffective.

We have concluded that we have a material weakness as of September 30, 2016. However, based on the results of the investigation to date, no material adjustments, restatements or other revisions to our previously issued financial statements are required.

## DERIVATIVE AND DEMAND FUTILITY
## ALLEGATIONS FOR THE BOARD OF COGNIZANT

42.   Plaintiff is a current owner of Cognizant units and was an owner of Cognizant units during the Relevant Period in which the Individual Defendants' wrongful course of conduct alleged herein occurred.

43.   Plaintiff brings this action derivatively to redress injuries suffered, and to be

13

suffered, by Cognizant as a direct result of the breaches of fiduciary duty by the Individual Defendants.

44.     Defendants, who were members of Cognizant's Board at the time Plaintiff filed his complaint, include: Abdalla, Breakiron-Evans, D'Souza, Fox, Klein, Mackay, Narayanan, Patsalos-Fox, Weissman, Wendel and non-defendant Jonathan Chadwick.

45.     Plaintiff has not made any demand upon Cognizant to bring an action on behalf of the Company asserting claims herein to recover damages for the injuries suffered by Cognizant, since such demand would be a futile, wasteful and useless act, and is therefore excused, for the reasons stated herein.

46.     Demand is excused because the unlawful acts and practices alleged herein cannot be defended by the Individual Defendants and are not subject to the protection of any independent business judgment since it would undoubtedly be in the Company's benefit to recover the damages caused by the Individual Defendants' wrongdoings and to assert these derivative claims.

47.     Demand is excused because the wrongs alleged herein constitute violations of fiduciary duties owed by the Individual Defendants. The Individual Defendants are subject to liability for breaching their fiduciary duties to the Company by, among other things, causing Cognizant to pursue an improper, unethical, and illegal course of conduct in its business practices, as discussed above.

48.     The Individual Defendants' wrongful conduct was continuous and occurred throughout the applicable time period. It resulted in ongoing and continuous harm to the Company. The Individual Defendants participated in and/or failed to adequately address, correct and/or disclose such conduct.

**Likelihood of Substantial Liability of the Entire Board**

49.     Demand is additionally excused because the Individual Defendants face a substantial likelihood of liability in this action as a result of their acts alleged herein. The Board's challenged misconduct at the heart of this case constitutes unlawful criminal activity or the facilitation of criminal activity, including knowingly and consciously presiding over the Company's systematic violations of anticorruption laws and possible FCPA violations. In essence, as the "ultimate decision-making body" of the Company, the Board affirmatively adopted, implemented, and condoned a business strategy based on deliberate, widespread, and often criminal violations of anticorruption laws. Breaking the law is not, however, a legally protected business decision and such conduct can in no way be considered a valid exercise of business judgment. Accordingly, demand on the Board is excused.

50.     In addition, the Individual Defendants face a substantial likelihood of personal liability and have caused Cognizant to face a substantial likelihood of liability from securities class action cases filed against Cognizant, which allege that the Company and its senior executives issued false and misleading statements and made material omissions.

51.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Cognizant. The Individual Defendants received compensation and director remuneration at the same time in which they were engaged in an illegal scheme and breached their fiduciary duties owed to the Company.

52.     The Company's Anticorruption Policy specifically references the FCPA stating, that "[n]o one — neither Cognizant employees nor others acting on Cognizant's behalf — is permitted to offer, make, promise, request, or accept a bribe, or to otherwise make any improper payment in connection with Cognizant's business." As confirmed by the Company's policy,

15

violation of anti-corruption laws "is a serious matter and can result in criminal or civil penalties against Cognizant and the individual involved in the violation, as well as harm to Cognizant's reputation." It is highly significant that Defendants were specifically warned against violating the FCPA, because, among other reasons, it demonstrates that they were aware of the potentially crippling effects that the disclosure of these illegal practices could have upon the Company's business, financial condition and results of operations. Furthermore, pursuant to the Company's Corporate Governance Guidelines ("Governance Guidelines"), the Board is responsible for, inter alia, "[e]stablishing a corporate environment that promotes timely and effective disclosure (including robust and appropriate controls, procedures and incentives), fiscal accountability, high ethical standards and compliance with all applicable laws and regulations."

53.     Furthermore, because of Defendants' advisory, executive, managerial, and directorial positions with Cognizant, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels. The Board has full and complete access to members of the Company's management. Thus, the Board had ample opportunity to be fully informed about the Company and know the Company's true financial condition and the full extent of the Company's misrepresentations and violations of the law.

54.     In addition, demand is also excused because the Individual Defendants engaged in or ratified the wrongdoing alleged herein as these Defendants reviewed, prepared, signed, or had access to the materially false and misleading SEC filings described herein. All of the pertinent information regarding Cognizant's operations, business, and prospects was provided to the Individual Defendants and it was the duty of these Defendants to properly evaluate this information and provide thorough guidance and governance to the Company. As such, these

16

Defendants cannot be expected to prosecute claims against themselves and/or persons or entities with whom they have extensive inter-related business and professional and personal entanglements, including the Individual Defendants, if Plaintiff demanded that they do so. The Individual Defendants, because of these relationships (as further described below), have developed debilitating conflicts of interest that prevent them from taking the necessary and proper action on behalf of Cognizant.

**Likelihood of Substantial Liability of the Audit Committee Defendants**

55.     Moreover, the Audit Committee Defendants—Defendants Abdalla, Break-iron, Klein, Mackay and Wendel—as members of the Audit Committee, were responsible for reviewing the Company's financial accounting, internal control and financial reporting functions.

56.     The Audit Committee Defendants breached their fiduciary duties by failing to perform their designated duties and responsibilities as set forth in the Audit Committee Charter by causing and allowing the Company to issue false and misleading statements; failing to identify, detect, and prevent material misstatements in the Company's SEC filings; and failing to put in place or maintain proper internal controls. As a result of their breaches of the duties of care, good faith, and loyalty, the Audit Committee Defendants face a substantial likelihood of liability such that any demand upon them is futile.

**Likelihood of Substantial Liability of the Compensation Committee**

57.     The Compensation Committee Defendants—Defendants Fox, Klein, Patsalos-Fox and Weissman—as members of the Compensation Committee, are responsible for evaluating and approving executive compensation.

58.     The Compensation Committee Defendants breached their fiduciary duties by failing to perform their designated duties and responsibilities as delineated in the Compensation

Committee Charter by putting their personal interests before those of the Company—since the Individual Defendants short-term compensation, was determined at least in part, by the successful financial performance of the Company. This elevation of their personal pecuniary interests by the Compensation Committee Defendants violated their duty of loyalty to the Company by, among other things, failing to properly allocate the impact of risk among the Company's executives and shareholders. As a result of their breaches of fiduciary duties, the Compensation Committee Defendants face a substantial likelihood of liability such that any demand upon them is futile.

**Likelihood of Substantial Liability of the Governance Committee Members**

59.    The members of the Nominating and Corporate Governance Committee – Defendants Abdalla, Break-iron, Fox, Klein, Patsalos-Fox, Weissman and Wendel were responsible in assisting the Board in its responsibilities relating to directorships and corporate governance principles. The Nominating and Corporate Governance Committee's responsibilities include developing, recommending and/or reviewing the Company's corporate governance principles and keeping abreast of developments with regard to corporate governance.

60.    These members of the Nominating and Corporate Governance Committee failed to meet such responsibilities. As a result of failing to oversee and implement the company's governance principles, demand upon these defendants is futile.

**The Individual Defendants Lack Independence**

61.    Demand is also excused because the Individual Defendants as members of the Board, are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute a derivative action such as the instant action as a result of their participation or approval in the wrongs alleged herein, as well as the additional facts set forth

below, which taken as a whole, unequivocally show that the Individual Defendants have conflicts of interest and lack sufficient independence to exercise business judgment.

62.     Defendant D'Souza is not independent and therefore is incapable of seriously considering demand because he served as CEO of the Company during the Relevant Period. This lack of independence renders D'Souza incapable of impartially considering a demand to commence and prosecute this action. D'Souza additionally signed Cognizant's false and misleading SEC filings. As such, Defendant Souza is incapable of impartially considering a demand because he has an interest in maintaining his principal occupation and the substantial compensation that he receives in connection with said occupation. Demand is additionally futile with regard to Defendant D'Souza as he may be responsible for damages in connection with the wrongdoings alleged herein.

63.     The actions of the Board have impaired the Board's ability to exercise its business judgment and has rendered it incapable of reaching an independent decision regarding the acceptance of Plaintiff's demands herein.

64.     Under the factual circumstances described herein, the Individual Defendants have put their personal interests over those of the Company and as such are more concerned with protecting themselves than they are concerned with prosecuting this action.

65.     Cognizant has been and will continue to be, subjected to lawsuits for the wrongdoing alleged herein, yet the Individual Defendants have not filed any lawsuits against themselves or others responsible for said wrongful conduct. Thus, the Individual Defendants are breaching their fiduciary duties to the Company and demand upon them is futile.

66.     Plaintiff has not made any demand on shareholders of Cognizant to institute this action since such demand would be a futile and useless act for the following reasons:

    a.   Cognizant is a publicly traded company with thousands of shareholders of record;

    b.   Making demand on such a voluminous number of shareholders would be impossible for Plaintiff, who has no means of collecting the names, addresses, or phone numbers of Cognizant shareholders; and

    c.   Making demand on all shareholders would force Plaintiff to incur excessive expense and obstacles, assuming all shareholders could even be individually identified with any degree of certainty.

67.    The Company has been directly and substantially injured by reason of the Individual Defendants' intentional breach and/or reckless disregard of their fiduciary duties to Cognizant. Plaintiff, as a shareholder of the Company, seeks damages and other relief on behalf of Cognizant, in an amount to be proven at trial.

**COUNT I**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES**
**FOR FAILING TO MAINTAIN INTERNAL CONTROLS**

68.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

69.    As alleged herein, each of the Defendants has a fiduciary duty to, among other things, exercise good faith to ensure that when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

70.    Defendants willfully ignored the obvious and pervasive problems with Cognizant's internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

71.    As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

**COUNT II**

20

**AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT**

72.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

73.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Cognizant.

74.     Plaintiff, as a shareholder and representative of Cognizant, seek restitution from these Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and breach of fiduciary breaches.

**COUNT III**
**AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL**

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Cognizant, for which they are legally responsible. In particular, Defendants abused their positions of authority by causing or allowing Cognizant to misrepresent material facts regarding its financial position and business prospects.

77.     As a direct and proximate result of Defendants' abuse of control, Cognizant has sustained significant damages.

78.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

79.     Plaintiff, on behalf of Cognizant, has no adequate remedy at law.

**COUNT IV**
**AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT**

80.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.     Defendants had a duty to Cognizant and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Cognizant.

82.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Cognizant in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence, and candor in the management and administration of Cognizant's affairs and in the use and preservation of Cognizant's assets.

83.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Cognizant to engage in the allegations complained of herein which they knew had an unreasonable risk of damage to Cognizant, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Cognizant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Cognizant to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and rules and to protect the Company and its shareholders from a repeat of the damaging events described herein;

22

C.     Awarding to Cognizant restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury trial.

Dated: February 22, 2017                    Respectfully submitted,

Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER**
   **GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel:  (845) 356-2570
Fax:  (845) 356-4335
ggraifman@kgglaw.com

*Liaison Counsel for Plaintiff*

William B. Federman, Esq.
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com

*Additional Counsel for Plaintiff*

23