COHN LIFLAND PEARLMAN
  HERMANN & KNOPF LLP
PETER S. PEARLMAN
MATTHEW F. GATELY
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone:  201/845-9600
201/845-9423 (fax)
mfg@njlawfirm.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION DERIVATIVE LITIGATION | ) ) ) ) ) | No. 2:17-cv-01248-WHW-CLW FIRST AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) | DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.      This is a shareholder derivative action on behalf of nominal defendant Cognizant Technology Solutions Corp. ("Cognizant" or the "Company") against certain members of its Board of Directors ("Board"), and certain current and former top officers and directors of the Company, for breach of fiduciary duty, corporate waste, unjust enrichment, and contribution and indemnification.[1]  This action arises from material representations devoid of a reasonable factual basis contained in Cognizant's Sustainability Reports.  In its 2014 and 2015 Sustainability Reports, Cognizant disclaimed the existence of any reported incidents of corruption at the Company's operations.  But, in fact, when these Sustainability Reports issued, Cognizant's top insiders, including its President, Chief Legal Officer and other members of senior management, had been engaged in a massive bribery scheme in India designed to secure government construction-related permits and operating licenses for the Company by making improper payments to foreign officials.  That misconduct has cost the Company well in excess of a hundred million dollars; and that sum continues to rise exponentially.  The government permits and operating licenses

---

[1]   Defendants are Cognizant's current and former directors and officers – Francisco D'Souza, John E. Klein, Zein Abdalla, Maureen Breakiron-Evans, Jonathan Chadwick, John N. Fox, Jr., Leo S. Mackay, Jr., Michael Patsalos-Fox, Robert E. Weissman, Lakshmi Narayanan, Thomas M. Wendel, Karen McLoughlin, Gordon J. Coburn, Ramakrishnan Chandrasekaran, Rajeev Mehta, and Steven E. Schwartz (together, "Defendants").  Throughout this Complaint, emphasis is added unless otherwise stated.

allowed Cognizant to operate in Special Economic Zones ("SEZs") that provided highly-favorable tax holidays and related economic benefits essential to its current and future business and earnings prospects.

2.     A majority of Cognizant's operations are in India, a country ranked as one of the most corrupt countries for doing business in the world and where significant corruption risks such as bribery, kickbacks, and improper payments are prevalent.[2] Because its business operations are primarily based in foreign countries,[3] including India, Cognizant's Board, including the Defendants, were well-aware that it was subject to the requirements of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, 15 U.S.C. §§78dd-1, *et seq.* Enacted by the U.S. Congress in 1977, the FCPA forbids covered companies like Cognizant from paying bribes, kickbacks and other improper payments to foreign officials to obtain and/or retain business. The FCPA also requires issuers of U.S. registered securities, like Cognizant, to design, maintain, and administer internal controls and accounting systems designed

---

[2]     *India still among most corrupt countries in the world: Transparency International*, The Economic Times (Nov. 17, 2009), https://economictimes.indiatimes.com/news/economy/indicators/india-still-among-most-corrupt-countries-in-the-world-transparency-international/articleshow/5240053.cms; *Country Data: India*, Transparency International (2019), https://www.transparency.org/en/countries/india#.

[3]     According to Cognizant's 10-K filings from 2014-2016, at least 72% of its employees were employed in India, and at least 81% of its employees were employed outside of North America.

- 2 -

to detect and deter improper payments to foreign officials, such as bribes and kickbacks, from being made in the issuer's name.

3. India offers Cognizant crucial critical business advantages to support its business model – including generous tax holidays, favorable labor costs, and less expensive regulatory compliance. India, however, has long been known as a hotbed for corrupt business practices, including bribery and other practices, with high potential to violate the FCPA. In fact, India has been consistently identified on corruption perception indices as a nation with notoriously widespread corruption well before the operative events in this case.[4]

---

[4] Ronak D. Desai, *Doing business in India's corruption-rich environment remains a perilous endeavor*, Harvard Kennedy School Belfer Center for Science and International Affairs (Feb. 18, 2014), https://www.belfercenter.org/publication/doing-business-indias-corruption-rich-environment-remains-perilous-endeavour; Robert Olsen, *Tata's Revelation Highlights India's Culture of Corruption*, Forbes (Nov. 17, 2010), https://www.forbes.com/sites/robertolsen/2010/11/17/tatas-revelation-highlights-indias-culture-of-corruption/#47c7117d5b21; Smriti Subramanian, *MNCs in India should have clear anti-bribery rules; anti-corruption laws need to be strengthened*, The Economic Times (Aug. 4, 2013), https://economictimes.indiatimes.com/news/company/corporate-trends/mncs-in-india-should-have-clear-anti-bribery-rules-anti-corruption-laws-need-to-be-strengthened/articleshow/21582617.cms?from=mdr; Suman Layak, *MNCs find it tough to do business in India due to corruption and uncertain laws*, The Economic Times (Aug. 4, 2013), https://economictimes.indiatimes.com/news/company/corporate-trends/mncs-find-it- tough-to-do-business-in-india-due-to-corruption-and-uncertain-laws/articleshow/21581460.cms; Steven Pearlstein, *India's costly culture of corruption*, The Washington Post (April 3, 2011), https://www.washingtonpost.com/business/economy/indias-costly-culture-of-corruption/2011/03/28/AFXoUMPC_story.html; Dhruv Phophalia, *Corruption Risks in India: What Companies Need to Know*, Alvarez & Marsal (Sep. 23, 2014), https://www.alvarezandmarsal.com/insights/corruption-risks-india-what-companies-

- 3 -

4.      At the times relevant hereto, the legal and accounting worlds were aware

of the corruption in India's business community.  Multiple law firms and accounting

firms, as well as business consultants, developed special guidelines for companies

who do business in India, including laying out the significant risks of FCPA violations

and the challenges these companies will face while navigating the complex and

difficult Indian bureaucracy.[5]  Furthermore, the Department of Justice ("DOJ") and

United States Securities and Exchange Commission ("SEC") also released

comprehensive guidelines for FCPA compliance, noting that FCPA violations were an

enforcement priority for the U.S. Government, and published information to assist

---

need-know; *Corruption in India, Multinational Join the Accused*, Knowledge@Wharton (Feb. 19, 2013), https://knowledge.wharton.upenn.edu/article/corruption-in-india-multinationals-join-the-accused/; Ravi Venkatesen, *How to deal with corruption in India (and any other emerging market)*, The Economic Times (Jun. 12, 2013), https://economictimes.indiatimes.com/blogs/Musings/how-to-deal-with-corruption-in-india-and-any-other-emerging-market/; Aman Sharma, *Private sector also involved in corruption: Transparency report*, India Today (Mar. 22, 2012), https://www.indiatoday.in/india/north/story/government-industry-nexus-graft-transparency-international-96711-2012-03-22.

[5]      John E. Turlais & David W. Simon, *Anti-Bribery and FCPA Compliance Guide for U.S. Companies Doing Business in India*, Foley & Lardner LLP (Nov. 21, 2014), https://www.foley.com/-/media/files/insights/publications/2014/11/antibribery-and-fcpa-compliance-guide-for-us-compa/files/antibribery-and-foreign-corrupt-practices-act-comp/fileattachment/1612011indiabrochure.pdf; *Bribery and corruption: ground reality in India*, Ernst & Young, Federation of Indian Chambers of Commerce & Industry (2013), http://www.ficci.in/SEDocument/20254/FICCI-EY-Report-Bribery-corruption.pdf.; *Managing corruption risks in India*, Deloitte Touche Tohmatsu Limited (2014), https://www2.deloitte.com/content/dam/Deloitte/us/Documents/finance/us-fas-managingcorruptionriskInIndia-05162014.PDF.

- 4 -

companies to avoid FCPA violations and to stay on the right side of the law.[6]

5.      To allay shareholders' concerns about the Company's exposure to potential corruption risks, Defendants publicly presented Cognizant as a company fully committed to ethical, honest, and lawful business practices, fully in compliance with the FCPA.   Towards this end, Cognizant, while under the stewardship of Defendants, adopted – but did not adhere to – a formal anti-corruption policy and implemented a detailed code of ethics.  The "Core Values and Code of Ethics" and the "Cognizant Technology Solutions Anti-Corruption Statement" expressly forbade directors, officers, employees, and other agents of the Company from paying bribes or making other improper payments to foreign officials to obtain or retain contracts and other things of value.

6.      Further, in the Company's 2014 and 2015 Sustainability Reports, which Defendants caused to be widely disseminated to Cognizant stakeholders, the Company represented, among other things, that Cognizant conducted thorough internal audits

---

[6]      *A Resource Guide to the U.S. Foreign Corrupt Practices Act*, U.S. Department of Justice & U.S. Securities and Exchange Commission (Nov. 14, 2012), https://www.justice.gov/sites/default/files/criminal-fraud/legacy/2015/01/16/ guide.pdf; *SEC Enforcement Actions: FCPA Cases*, U.S. Securities and Exchange Commission, https://www.sec.gov/spotlight/fcpa/fcpa-cases.shtml.

- 5 -

regarding anti-corruption practices and did not find any instances of corruption in either 2014 or 2015. Specifically, the 2014 and 2015 Sustainability Reports stated, respectively: "No incidents [of corruption were] reported in 2014," and "There were no incidents [of corruption] reported in 2015." The Sustainability Reports further represented that Cognizant provided extensive anti-corruption training and that its "Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption." For example, the 2014 Sustainability Report represented that Cognizant "delivered 331,114 hours of Code of Ethics training through eLearning in 2014" and "delivered live Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines." Similarly, the 2015 Sustainability Report represented that Cognizant "delivered 689,288 hours of Code of Ethics training through eLearning in 2015" and "delivered live Code of Ethics trainings to targeted audiences of over 203,947 associates in India."

7.     In truth, Cognizant's anti-corruption controls were not nearly as robust as Defendants falsely represented. In fact, Defendants lacked a reasonable factual basis for their positive statements in the 2014 and 2015 Sustainability Reports praising the Company's anti-corruption compliance. Had Defendants exercised the diligence required by their fiduciary duties of candor, loyalty, and good faith and investigated, they would have discovered the true facts. Namely, that Cognizant's President,

- 6 -

Defendant Gordon J. Coburn, and Chief Legal and Corporate Affairs Officer, Defendant Steven E. Schwartz, and other members of senior management had been, since 2012, engaged in a bribery scheme in India designed to unlawfully secure business advantages for the Company.

8. Thus, in breach of their fiduciary duties, the Defendants materially falsely and misleadingly stated that Cognizant had performed a thorough audit of the Company's anti-corruption compliance and that there were no incidents of corruption reported in 2014 and 2015. When the 2014 and 2015 Sustainability Reports were issued, Cognizant's senior management was, in fact, facilitating the Indian bribery scheme by overriding and/or failing to enforce the Company's internal financial controls designed to detect, report and prevent such bribes and improper payments.

9. The unlawful India bribery scheme, orchestrated from Cognizant's New Jersey offices, continued unabated until late September 2016. Then on September 30, 2016, Cognizant suddenly announced that it was conducting an internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the FCPA and other laws. The Company also revealed that it had notified the DOJ and SEC of its internal investigation. That same day, Cognizant's President, Coburn, suddenly resigned without explanation, and Cognizant's Chief Legal Officer, Schwartz, likewise resigned in November 2016. Then, on March 1, 2017, Cognizant admitted that the Indian bribery scheme likely

- 7 -

stretched from at least 2010 to 2015, involved payments exceeding $6 million, and several members of the Company's senior management may have been involved. Demonstrative of the severity of this misconduct, in response to this news, Cognizant's stock price declined from $55.00 to $47.71 per share, or more than 13%, wiping out more than $4.4 billion in once-valuable shareholders' equity.

10.    Defendants' breaches of their fiduciary duties of candor, good faith, and loyalty have severely damaged Cognizant.  On February 15, 2019, after already incurring over $60 million in investigative costs, Cognizant agreed to pay over $25 million in fines and penalties to resolve SEC enforcement proceedings brought as a result of Cognizant's failure to comply with the anti-bribery and books-and-records provisions of the FCPA.  Additionally, Cognizant has been named as a primary defendant in a costly and expensive-to-defend class-action lawsuit for violations of the anti-fraud provisions of the federal securities laws.  Moreover, while under the stewardship of Defendants, Cognizant wastefully spent approximately $42 million to repurchase 650,000 shares of Cognizant stock on the open market at prices artificially inflated by Defendants' false and misleading statements about the effectiveness of Company's FCPA and anti-corruption and ethics legal compliance.

11.    Although Cognizant has been severely damaged by Defendants' misconduct, Defendants have not fared nearly so badly.  Defendants have pocketed over $23,589,201 in director and executive compensation not justified by Cognizant's

- 8 -

performance while under their stewardship. Moreover, Defendants D'Souza, Klein, Breakiron-Evans, Fox, Mackay, Wendel, Narayanan, Coburn, Schwartz, and McLoughlin have reaped over $80,493,140 in unlawful insider trading proceeds by selling 1,331,237 shares of their personal Cognizant stock based on adverse material non-public information.

12.     Nevertheless, the Cognizant Board has not – and will not – take legal action against the Cognizant insiders responsible for this debacle, despite knowing that their actions harmed the Company and were illegal. By this action, Plaintiffs seek to recover money from Defendants for their wrongful acts.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. §1331 because certain of the claims asserted herein arise under §21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

14.     This Court has jurisdiction under 28 U.S.C. §1332(a)(2), because prior to consolidation Plaintiffs and Defendants in *Lautzenheiser v. Abdalla, et al.*, No. 2:17-cv-01248-WHW-CLW, and *Schaufelberger, et al. v. D'Souza, et al.*, No. 2:19-cv-08289-WHW-CLW, were citizens of the different states and the amount in controversy exceeded $75,000, exclusive of interest and costs. This action is not a

- 9 -

collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.[7]

15.    This Court has jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16.    Venue is proper in this Court under 28 U.S.C. §1391(a), because: (i) Cognizant maintains its principal place of business in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Cognizant, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

---

[7]    On June 20, 2017, and May 14, 2019, respectively, the Court consolidated *Lautzenheiser v. Abdalla, et al.*, No. 2:17-cv-01248-WHW-CLW, and *Schaufelberger, et al. v. D'Souza, et al.*, No. 2:19-cv-08289-WHW-CLW, filed on February 22, 2017, and March 11, 2019, respectively, with *In re Cognizant Technology Solutions Corporation Derivative Litigation*, No. 2:17-cv-01248-WHW-CLW, which includes actions based on federal question jurisdiction.

- 10 -

**THE PARTIES**

17.     Plaintiffs are Josh Schaufelberger, Brian Hayden, Tim Keeley, Robert Calhoun, Glyn Ramage, Robert Green, Steven Tyler, and Michael Testerman, in their capacities as Trustees of the Employers and Laborers Locals 100 and 397 Pension Fund.   Employers and Laborers Locals 100 and 397 Pension Fund is, and has continuously been, a shareholder of Cognizant since 2012.  Plaintiffs Schaufelberger, Hayden, Keeley, Calhoun, Ramage, Green, Tyler, and Testerman are each citizens of the State of Illinois.

18.     Plaintiff John Lautzenheiser is, and has continuously been, a shareholder of Cognizant since at least 2012.   Plaintiff Lautzenheiser was a citizen of the Commonwealth of Massachusetts on the date of the commencement of his action, *Lautzenheiser v. Abdalla, et al.*, No. 2:17-cv-01248-WHW-CLW.   Plaintiff Lautzenheiser is now a citizen of the State of New Hampshire.

19.     Plaintiff Michael S. Graniero, III is, and has continuously been, a shareholder of Cognizant since December 2014.  Plaintiff Graniero is a citizen of the State of California.

20.     Plaintiff Marjorie A. Hoy, as Trustee and Beneficiary of the James B. Hoy & Marjorie A. Hoy TTEES FBO Marjorie A. Hoy Rev Liv Trust is, and has

- 11 -

continuously been, a shareholder of Cognizant since March 2013. [8]  Plaintiff Hoy is a citizen of the State of Florida.

21.     Nominal Defendant Cognizant, a Delaware corporation, is a technology-driven professional services corporation with its principal executive offices located at 500 Frank W. Burr Boulevard, Teaneck, New Jersey 07666.  The Company's shares traded on the NASDAQ under the symbol "CTSH."  Nominal Defendant Cognizant is a citizen of the States of Delaware and New Jersey.

22.     Defendant Francisco D'Souza ("D'Souza") served as CEO from 2007 to June 2019, and as a director of Cognizant since 2007.  Defendant D'Souza received at least $12,030,863 in salary, stock and other incentive-based compensation not justified by the Company's performance while under his stewardship.   While Cognizant stock sold at artificially inflated prices, Defendant D'Souza sold 723,583 shares of Cognizant stock for unlawful insider trading proceeds of $42,371,290. Defendant D'Souza is a citizen of the State of New Jersey.

23.     Defendant John E. Klein ("Klein") has served as a director of Cognizant since 1998.   He also has served on the Audit, Compensation, and Corporate Governance Committees of the Cognizant Board.  Defendant Klein received at least $494,947 in directors' fees, consisting of cash and incentive stock awards, from

---

[8]     James B. Hoy, as trustee and beneficiary of the James B. Hoy & Marjorie A. Hoy TTEES FBO Marjorie A. Hoy Rev Liv Trust, is stepping in as plaintiff as his wife, Marjorie A. Joy, recently passed away.

Cognizant not justified by the Company's performance while under his stewardship. While Cognizant stock sold at artificially inflated prices, Defendant Klein sold 61,229 shares of Cognizant stock for unlawful insider trading proceeds of $3,753,338. Defendant Klein is a citizen of the State of Florida.

24.     Defendant Zein Abdalla ("Abdalla") has served as a director of Cognizant since September 15, 2015. He also has served on the Audit and Corporate Governance Committees of the Cognizant Board. Defendant Abdalla received at least $323,947 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. Defendant Abdalla is a citizen of the State of Connecticut.

25.     Defendant Maureen Breakiron-Evans ("Breakiron-Evans") has served as a director of Cognizant since 2009. She also has served on the Audit and Corporate Governance Committees of the Cognizant Board. Defendant Breakiron-Evans received at least $350,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under her stewardship. While Cognizant stock sold at artificially inflated prices, Defendant Breakiron-Evans sold 20,000 shares of Cognizant stock for unlawful insider trading proceeds of $1,199,900. Defendant Breakiron-Evans is a citizen of the State of Florida.

- 13 -

26.     Defendant Jonathan Chadwick ("Chadwick") has been a director of Cognizant since 2016.  He also has served on the Audit Committee of the Cognizant Board.  Defendant Chadwick received at least $359,302 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.  Defendant Chadwick is a citizen of the State of California.

27.     Defendant John N. Fox, Jr. ("Fox") has been a director of Cognizant since 2007.  He also has served on the Compensation and Corporate Governance Committees of the Cognizant Board.  Defendant Fox received at least $313,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.   While Cognizant stock sold at artificially inflated prices, Defendant Fox sold 30,645 shares of Cognizant stock for unlawful insider trading proceeds of $1,838,975.  Defendant Fox is a citizen of the State of California.

28.     Defendant Leo S. Mackay, Jr. ("Mackay") has served as a director of Cognizant since 2012.  He also has served on the Audit Committee of the Cognizant Board.  Defendant Mackay received at least $316,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.  While Cognizant stock sold at artificially inflated prices, Defendant Mackay sold 25,780 shares of Cognizant stock for unlawful

- 14 -

insider trading proceeds of $1,555,823. Defendant Mackay is a citizen of the Commonwealth of Virginia.

29.     Defendant Michael Patsalos-Fox ("Patsalos-Fox") has served as a director of Cognizant since 2012. He also has served on the Compensation and Corporate Governance Committees of the Cognizant Board. Defendant Patsalos-Fox received at least $313,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. Defendant Patsalos-Fox is a citizen of the State of New Jersey.

30.     Defendant Robert E. Weissman ("Weissman") served as a director of Cognizant from 2001 to December 2017. Defendant Weissman also served on the Compensation and Corporate Governance committees of the Cognizant Board. Defendant Weissman received at least $328,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. Defendant Weissman is a citizen of the State of Florida.

31.     Defendant Thomas M. Wendel ("Wendel") served as a director of Cognizant from 2003 to April 2017. He also served on the Audit and Corporate Governance Committees of the Cognizant Board. Defendant Wendel received at least $325,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.

While Cognizant stock traded at artificially inflated prices, Defendant Wendel sold 15,000 shares of Cognizant stock for unlawful insider trading proceeds of $946,350. Defendant Wendel is a citizen of the State of Missouri.

32.     Defendant Lakshmi Narayanan ("Narayanan") served as a director of Cognizant from 2003 to April 2017.  He also served as Vice Chairman of the Cognizant Board from 2007 to April 2017.  Defendant Narayanan received at least $299,947 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. While Cognizant stock traded at artificially inflated prices, Defendant Narayanan sold 200,000 shares of Cognizant stock for unlawful insider trading proceeds of $12,968,679.  Defendant Narayanan is a citizen of the Republic of India.

33.     Defendant Gordon J. Coburn ("Coburn") served as President of Cognizant from 2012 to September 27, 2016.  Defendant Coburn received at least $4,494,983 in salary, stock and other incentive-based compensation not justified by the Company's performance while under his stewardship.  While Cognizant stock traded at artificially inflated prices, Defendant Coburn sold 159,368 shares of Cognizant stock for unlawful insider trading proceeds of $9,949,617.  Defendant Coburn is a citizen of the State of Colorado.

34.     Defendant Steven E. Schwartz ("Schwartz") served as Cognizant's Executive Vice President and Chief Legal and Corporate Affairs Officer from

- 16 -

December 2013 to November 2016. Schwartz previously served as General Counsel and Secretary of Cognizant from 2007 to November 2013. Defendant Schwartz received a salary, stock and other incentive-based compensation not justified by the Company's performance while under his stewardship. While Cognizant stock traded at artificially inflated prices, Defendant Schwartz sold 29,405 shares of Cognizant stock for unlawful insider trading proceeds of $1,801,965. Defendant Schwartz is a citizen of the State of Connecticut.

35.     Defendant Karen McLoughlin ("McLoughlin") has served as Chief Financial Officer of Cognizant since 2012. Defendant McLoughlin received at least $3,637,530 in salary, stock and other incentive-based compensation not justified by the Company's performance while under her stewardship. While Cognizant stock traded at artificially inflated prices, Defendant McLoughlin sold 66,227 shares of Cognizant stock for unlawful insider trading proceeds of $4,107,203. Defendant McLoughlin is a citizen of the State of New Jersey.

36.     Defendant Rajeev Mehta ("Mehta") served as President of Cognizant from September 2016 to April 2019, and Chief Executive Officer, IT Services from December 2013 to September 2016. Defendant Mehta received at least $4,553,531 in salary, stock and other incentive-based compensation not justified by the Company's performance while under his stewardship. Defendant Mehta is a citizen of the State of Texas.

37.     Defendant Ramakrishnan Chandrasekaran ("Chandrasekaran") has served as Executive Vice President and President of Global Industries and Consulting since 2013.  Defendant Chandrasekaran received at least $3,436,680 in salary, stock and other incentive-based compensation not justified by the Company's performance while under his stewardship.  Defendant Chandrasekaran is a citizen of the Republic of India.

## THE FIDUCIARY DUTIES OF COGNIZANT'S DIRECTORS AND OFFICERS

38.     It is a well-established principle that corporate directors and officers "owe fiduciary duties of care and loyalty" to their company and its shareholders. *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009).  As a corollary, Director Defendants[9] have the duty "'to exercise oversight' and to monitor the corporation's operational viability, legal compliance, and financial performance." *Marchand v. Barnhill*, 212 A.3d 805, 809 (Del. 2019) (citation omitted).  The utter failure to implement a monitoring system that would report noncompliance is "an act of bad faith" and a "breach of the duty of loyalty." *Id.*  Such breach can "expose [directors] to liability." *Id.* at 820.  However, even if there existed a monitoring system, "the mere existence" of a system does not automatically shield directors from liability.

---

[9]   Defendants Abdalla, D'Souza, Mackay, Weissman, Breakiron-Evans, Fox, Narayanan, Wendel, Chadwick, Klein, and Patsalos-Fox were all directors of Cognizant and are collectively referred to as the "Director Defendants."

- 18 -

*Hughes v. Xiaoming Hu*, No. 2019-0112-JTL, 2020 WL 1987029, at *14 (Del. Ch. Apr. 27, 2020). Instead, the directors must adequately address issues or problems that are raised by the system because the conscious and willful disregard of risks waived by the board will also constitute bad faith and a breach of the directors' fiduciary duties. *See In re Clovis Oncology, Inc. Derivative Litig.*, No. 2017-0222-JRS, 2019 WL 4850188, at *13 (Del. Ch. Oct. 1, 2019) (denying motion to dismiss claim against directors of a pharmaceutical company who failed to oversee trials that were supposed to ensure efficacy of its core product, a lung cancer drug); *Marchand*, 212 A.3d at 822-23 (finding that nominal compliance with FDA regulations was insufficient to show that directors implemented a reporting system that would monitor the health and safety of its only product, ice cream); *Inter-Mktg. Grp. USA, Inc. on Behalf of Plains All Am. Pipeline, L.P. v. Armstrong*, No. 2017-0030-TMR, 2020 WL 756965, at *13 (Del. Ch. Jan. 31, 2020) (concluding that an audit committee failed in its oversight duties by not performing them and, as a result, the directors did not have a compliance monitoring system).

39.     By reason of their positions as Cognizant directors and/or officers and because of their ability to direct and control the Company's business and corporate affairs, Defendants owed Cognizant and its shareholders a fiduciary duty to use their utmost ability to control and manage Cognizant in an honest and lawful manner. Toward that end, Cognizant's directors and officers owed the Company and its

- 19 -

shareholders fiduciary duties to exercise candor, loyalty, good faith, and reasonable supervision over the Company's management, policies, practices, and internal controls.

40.    More specifically, as Cognizant's directors and officers, Defendants' fiduciary duties required them, among other things, to: (i) ensure that the Company complied with its legal obligations and requirements, including legal compliance with the anti-bribery provisions of the FCPA, as well as acting only within the scope of legal authority and disseminating truthful and accurate statements to Cognizant shareholders; (ii) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to lawfully maximize the value of the Company's shares; (iii) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and internal controls; (iv) remain fully informed as to how Cognizant conducts its operations and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith and take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the securities laws; (v) ensure that Cognizant was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations, including the federal

- 20 -

anti-corruption and securities laws; and (vi) refrain from breaching their fiduciary duties to the Company by adopting practices, procedures, and controls inconsistent with their fiduciary duties of care, candor, loyalty, and good faith.

41.     Additionally, the Board adopted and represented it would adhere, and was adhering to a framework designed to assist individual directors in the exercise of their fiduciary duties and responsibilities in order to serve the best interests of the Company and its shareholders.  More particularly, Cognizant's Corporate Governance Guidelines provide, in relevant part:

A.     **Director Responsibilities**

1.     Oversee Management of the Company.   ***The principal responsibility of the directors is to oversee the management of the Company*** and, in so doing, serve the best interests of the Company and its stockholders.  This responsibility includes:

\*     \*     \*

- Evaluating whether corporate resources are used only for appropriate business purposes;

- ***Establishing a corporate environment that promotes timely and effective disclosure (including robust and appropriate controls, procedures and incentives), fiscal accountability, high ethical standards and compliance with all applicable laws and regulations***;

\*     \*     \*

- Developing a corporate governance structure that allows and encourages the Board to fulfill its responsibilities;

- Providing advice and assistance to the Company's senior executives; and

- 21 -

    •    Evaluating the overall effectiveness of the Board and its committees.

2.    <u>Exercise Business Judgment</u>. In discharging their fiduciary duties of care, loyalty and candor, directors are expected to exercise their business judgment to act in what they reasonably believe to be the best interests of the Company and its stockholders.

3.    <u>Understand the Company and its Business</u>. Directors have an obligation to become and remain informed about the Company and its business, including the following:

*     *     *

    •    The relative standing of the business segments within the Company and vis-à-vis competitors;

    •    The factors that determine the Company's success; and

    •    ***The risks and problems that affect the Company's business and prospects.***

4.    <u>Establish Effective Systems</u>. ***Directors are responsible for determining that effective systems are in place for the periodic and timely reporting to the Board on important matters concerning the Company***, including the following:

    •    Current business and financial performance, the degree of achievement of approved objectives and the need to address forward-planning issues;

    •    Future business prospects and forecasts, including actions, facilities, personnel and financial resources required to achieve forecasted results;

    •    Financial statements, with appropriate segment or divisional breakdowns;

    •    ***Compliance programs to assure the Company's*** compliance ***with law and corporate policies***;

- 22 -

- • Material litigation and governmental and regulatory matters;

- • Monitoring and, where appropriate, responding to communications from stockholders; and

- • Directors should also periodically review the integrity of the Company's internal control and management information systems.

*     *     *

10.  <u>Ethics, Conflicts and Board Conduct</u>.  ***Members of the Board shall act at all times in accordance with the Company's code of ethics, which is applicable to all directors as well as all other Company personnel.***  This includes, in particular but without limitation, strict adherence to the Company's policies with respect to conflicts of interest, confidentiality, and ethical conduct in all business and personal dealings.

42.     Under the Charter of the Audit Committee of the Board, the members of the Audit Committee are responsible for the Company's financial reporting processes. This includes, among other things, reviewing and approving Cognizant's annual and quarterly financial reports filed on SEC Forms 10-K and 10-Q and earnings press releases filed on SEC Form 8-K in conjunction with their release to Cognizant shareholders. In particular, the Audit Committee Charter provides, in relevant part:

The purpose of the Audit Committee is to assist the Board of Directors' oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements including, but not limited to, oversight of:

- • The integrity of the Company's financial information reported to the public and the adequacy of the Company's internal controls;

*     *     *

- 23 -

- ***The performance of the Company's internal audit functions; and***

- ***The review and evaluation of enterprise risk management.***

*   *   *

6. <u>Review and Discussion</u>. The Audit Committee shall review and discuss with the Company's management and independent auditor the Company's audited financial statements, including the matters about which the applicable rules of the PCAOB require discussion.

7. ***Recommendation to Board Regarding Financial Statements***. The Audit Committee shall consider whether it will recommend to the Board of Directors that the Company's audited financial statements be included in the Company's Annual Report on Form 10-K.

43. As officers of a Delaware corporation, Defendants D'Souza, Coburn, Schwartz, Mehta, McLoughlin, and Chandrasekaran owed Cognizant fiduciary duties of care, candor, loyalty, and good faith. These are among the highest duties known to the law. As the Delaware Supreme Court explained in *Gantler*, the "officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and . . . the fiduciary duties of officers are the same as those of directors." 965 A.2d at 708-09. The officers of a Delaware corporation are "expected to pursue the best interests of the company in good faith (*i.e.*, to fulfill their duty of loyalty) and to use the amount of care that a reasonably prudent person would use in similar circumstances (*i.e.*, to fulfill their duty of care)." *Hampshire Grp., Ltd. v. Kuttner*, No. 3607-VCS, 2010 Del. Ch. LEXIS 144, at *35 (Del. Ch. July 12, 2010).

- 24 -

44.     Unlike directors, however, the officers of a Delaware corporation cannot be shielded from personal liability by 8 *Del. C.* §102(b)(7), which permits a Delaware corporation to offer such protection to corporate directors. *See Hampshire Grp.*, 2010 Del. Ch. LEXIS 144, at *43; *see also Chen v. Howard- Anderson*, 87 A.3d 648, 687 (Del. Ch. 2014) (holding "the Exculpatory Provision [under §102(b)(7)] does not protect [the CEO] when acting in his officer capacity").  Instead, the officers of a Delaware corporation "face a statutory exposure to liability that is often greater than directors." *Hampshire Grp.*, 2010 Del. Ch. LEXIS 144, at *43; *see also Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 780-81 (Del. Ch. 2016) (holding that officers owe fiduciary duties identical to those of directors, but adding that officers are also "agents who report to the board of directors" and "have a duty to provide the board of directors with the information that the directors need to perform their statutory and fiduciary roles").  As such, the officers of a Delaware corporation "cannot be shielded from personal liability by 8 *Del. C.* §102(b)(7)," but rather "can be held liable in damages to [Cognizant] if they acted with gross negligence and caused injury to the corporation." *Hampshire Grp.*, 2010 Del. Ch. LEXIS 144, at *43-*44.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

45.     In committing the wrongful acts complained of herein, Defendants pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of a common plan and/or design.  In addition to the

- 25 -

wrongful conduct complained of herein giving rise to primary liability, Defendants

further aided and abetted and/or assisted each other in breach of their fiduciary duties.

46.     Each Defendant aided and abetted and rendered substantial assistance in

the wrongs complained of herein.   In taking such action to substantially assist the

commission of the wrongdoing complained of herein, each Defendant acted with

knowledge of the primary wrongdoing, substantially assisted the accomplishment of

that wrongdoing, and was aware of his or her overall contribution to and furtherance

of the wrongdoing.

## FACTUAL ALLEGATIONS

### A.     Cognizant's Business and Foreign Corruption Risks

47.     Cognizant is a technology-driven professional services company.

Although based in Teaneck, New Jersey, the vast majority of the Company's business

and operations are located in India.   This is by design.   India offers Cognizant

significant financial benefits in exchange for locating its operations in government-

licensed SEZs.   These benefits include, among other things, generous tax holidays,

favorable labor costs, and less expensive and time-consuming regulatory compliance,

which Cognizant uses to offer its digital information and technology products and

services to its customers at extremely competitive prices.   But first the Company must

obtain and/or retain government construction-related permits and operating licenses

needed to situate its operations within the SEZs.   Otherwise, the economic advantages

- 26 -

detailed above would be unavailable and Cognizant's business strategy and results could be potentially impaired.

48.     Conducting business in India is known to be fraught with exposure to significant corruption risks, *i.e.*, bribery, kickbacks, and similar improper payments. Indeed, India has long been known as a hotbed for corrupt business practices and has been consistently ranked on corruption perception indices as a nation with a notoriously corrupt business climate.   According to Transparency International's Corruption Perceptions Index, for example, in 2014, 2015, and 2016, India received scores of 38, 38, and 40, respectively,[10] making it the 85th, 76th and 79th most corrupt country in the world out of 175, 168, and 176 nations surveyed, respectively.

49.     On February 11, 2016, in an article titled "India Remains One of the Most Corrupted Countries in the World," *Forbes* reported, in relevant part, as follows:

> India remains one of the most corrupt countries in the world, according to a recent report by Transparency International.
>
> The prominent watchdog group issued its annual Corruption Perceptions Index (CPI), which scores and ranks nations based upon expert perceptions of public sector corruption. A score of 0 corresponds to a rating of "highly corrupt" while 100 means a country is "very clean."

---

[10]  The Corruption Perceptions Index ranks countries and territories based on how corrupt their public sector is perceived to be. A country or territory's score indicates the perceived level of public sector corruption on a scale of 0 (highly corrupt) to 100 (very clean). A country or territory's rank indicates its position relative to the other countries and territories on the index.

- 27 -

India garnered a score of 38, making it the 76th most corrupt country in the world out of the 168 nations surveyed. Brazil, Thailand, Tunisia, Zambia and Burkina Faso obtained the same score.

50.     As a result of its foreign operations, Cognizant is subject to the FCPA. To help minimize corruption abroad, the FCPA prohibits companies from making improper payments, such as bribes and kickbacks, to foreign officials for the purpose of obtaining or retaining business.   The FCPA also requires companies whose securities are listed in the United States to meet its accounting provisions.   These accounting provisions, which operate in tandem with the FCPA's anti-bribery provisions, require corporations covered by the provisions to: (i) make and keep books and records that accurately and fairly reflect the transactions of the corporation; and (ii) devise and maintain an adequate system of internal accounting controls.

51.     The costs of non-compliance with the FCPA can be – and often are – enormous.   As the international law firm of White & Case LLP reported in 2010: "Gone are the days when a financial settlement of US$44 million would capture one's attention, as it did when Baker Hughes settled with the DOJ and SEC in 2007 for what was then the largest FCPA settlement. . . . [I]n the wake of Siemen's US$800 million settlement, it is more common to see substantially larger settlement payments." White & Case LLP, *2010: All Signs Point to a Record-Breaking Year for FCPA Enforcement* (Mar. 1, 2010).   This was prescient, indeed.   In 2014, 10 companies paid a total of $1.56 billion in FCPA fines, and in 2017, 11 companies paid over $1.92 billion.

Additionally, companies like Avon Products, Inc. and Weatherford International Limited reportedly spent $344 million and $125 million, respectively, on FCPA-related investigation costs alone.   Although enormous, these amounts pale in comparison to the reported $901 million Wal-Mart recently spent on its FCPA compliance investigation after claims of foreign bribery in Mexico arose.[11]

### B.      Cognizant's Anti-Corruption Legal-Compliance Charade

52.      Despite these clear risks of loss, however, Defendants still caused Cognizant to conduct the majority of its business overseas in India without adequately protecting the Company from the substantial, and readily apparent, risk of corruption. In the Company's shareholder communications, as a prophylactic measure designed to allay shareholders' concerns without seriously mitigating Cognizant's FCPA legal-compliance risks, Defendants consistently reinforced the notion that Cognizant had taken concrete steps to live up to its legal compliance obligations under the FCPA and other applicable anti-corruption laws.   They spoke positively about the Company's purported employee training on anti-corruption and about annual audits by competent staff designed to ferret out corruption within the Company's operations.

---

[11]   FCPA Professor, *Wal-Mart's Pre-Enforcement Action Professional Fees and Compliance Enhancements Top $900 Million* (Nov. 16, 2018), http://fcpaprofessor.com/wal-marts-pre-enforcement-action-professional-fees-compliance-enhancements-top-900-million/ #more-26231.

4844-2016-2754.v2-8/3/20

53.     Further still, while under the stewardship of Defendants, Cognizant adopted a plethora of formal polices and policy statements regarding anti-corruption and business ethics, all displayed prominently on the Company's website.   This included a formal "Anti-Corruption Statement," as well as a detailed "Core Values and Code of Ethics" policy.   Both of these policies purported to forbid directors, officers, employees, and other agents of Cognizant from paying bribes or making other improper payments to foreign officials to obtain or retain contracts and other things of value.   In particular, the "Core Values and Code of Ethics" stated, in relevant part:

**THE RIGHT WAY AT COGNIZANT**

In the competitive service environment in which we operate, we must maintain the highest standards of integrity.  Our reputation and our success depend on it.  Whether we're working in a development center, on-site with our customers, in our corporate office, or in our everyday lives, we must be role models of integrity.  Our Core Values ("Values") define the behaviors that will make us successful in the marketplace.

\*     \*     \*

**PREVENTING CORRUPT ACTIVITIES**

**No Bribery.  *Bribing a government official is illegal no matter where it occurs*.**  Specifically, we do not corruptly give or offer, directly or indirectly, anything of value, including cash, gifts, favors, charitable and political contributions, or hospitality/entertainment, to a government official to obtain or maintain business or any other advantage for the Company.  The same is true for private individuals doing business with Cognizant.

**Maintain Accurate Books and Records.  *Anti-corruption laws require that we maintain accurate books and records*.**   Never

- 30 -

misconstrue or mislabel a transaction in our books and records. All transactions must be accurately and timely recorded on the Company's books and records.

**Third Parties.** Retaining a third party to make an improper payment or take an action that is inconsistent with this Code or Cognizant's Anti-Corruption Statement is strictly prohibited.

For more information on the Company's expectations in regards to combatting bribery please see our <u>Anti-Corruption Statement</u>.

*   *   *

**NEVER ENGAGE IN INSIDER DEALING**

Through our work at Cognizant, some of us may learn about material, nonpublic (or "inside") information, potentially relating to our Company as well as other companies with which we work. *Trading securities, whether Cognizant's or a company with which we do business, based on inside information is illegal and is strictly prohibited.* Also, we may not give any such inside information – or "tip" – to others who might make trades based on it.

*   *   *

**CREATING AND MAINTAINING ACCURATE AND COMPLETE RECORDS**

We are all responsible for upholding all internal controls and for the accuracy of the Company's books and records, including timesheets, travel and expense reports, and financial statements we create and maintain.

54.     Similarly, the "Anti-Corruption Statement" stated, in relevant part:

**Cognizant Technology Solutions Anti-Corruption Statement**

**Why Do We Have This Statement?**

*This Statement confirms that Cognizant is committed to doing business ethically and complying with all anti-corruption laws that may apply to the Company including the U.S. Foreign Corrupt Practices Act ("FCPA"),* the U.K. Bribery Act 2010 (the "UK Bribery Act"), and local

- 31 -

anti-corruption laws.  No one – neither Cognizant employees nor others acting on Cognizant's behalf – is permitted to offer, make, promise, request, or accept a bribe, or to otherwise make any improper payment in connection with Cognizant's business.

**Scope of Statement**

This Statement applies to all Cognizant *Directors*, *officers*, and employees worldwide as well as all Cognizant business units and subsidiaries, joint ventures over which Cognizant has operational control, and business partners (collectively "Associates").

If local law or a business unit imposes stricter requirements than those described in this Statement, Associates must comply with those rules.

**Requirements**

**Prohibition Against Bribery & Corruption Generally**

Cognizant's rule about corruption is simple: *__we never pay bribes or act corruptly__*.

- A **bribe** is any payment or Anything of Value offered or provided to improperly influence a decision-maker or to obtain an unfair business advantage.

- An act is **corrupt** if it is performed to secure an improper advantage, either by paying a bribe or through other means (for example, by paying a kickback or a payoff, or by laundering money).

- **Anything of Value** includes items such as cash, bonuses, gifts, favors, charitable donations, political contributions, offers of employment, offers of hospitality/entertainment, kickbacks, or any other type of preferential benefit.  For further information, please consult the Code.

This Policy prohibits bribery of Government Officials and private persons, or making payments to relatives, friends, or colleagues of a private person or of a Government Official to obtain an unfair business

advantage. This includes the hiring of relatives of a Government Official for the purpose of influencing the official's decision making.

**Dealings with Government Officials**

All Cognizant Associates, no matter where they are located, must pay close attention to interactions with Government Entities and Officials.

A **Government Entity** refers to any:

- Government or government division;

- Department, agency, or instrumentality of such a government or organization;

- Political party; or

- Company or entity owned or controlled (partially or wholly) by or acting on behalf of any of the above.

Examples of Government Entities include, but are not limited to: governments of countries, states, provinces or cities; the United Nations; the International Monetary Fund; a customs or patent office; and state-owned businesses, banks, hospitals, utilities, and universities.

- A **Government Official** is any individual acting in an official capacity for or on behalf of a Government Entity.  Examples include, but are not limited to: a customs official; an inspector from a tax, health, or environmental agency; an employee of a state-owned bank; a journalist employed by a state-owned media company; the Chief Technology Officer of a government agency or ministry; a legislator such as a Technology Subcommittee Chairperson of a House of Parliament; a businessperson who is a consultant acting for and on behalf of such Government entity; and a professor or researcher at a state-owned university.

**Facilitation Payments**

A **facilitation payment** is generally a small payment made to a low-level Government Official for the purpose of securing or expediting the performance of a routine, nondiscretionary government action.

- 33 -

Cognizant does not permit facilitation payments absent prior approval in exceptional cases from the Chief Legal Officer/General Counsel.

## Gifts and Entertainment for Government Officials

Please be aware that Cognizant prohibits providing gifts to Government Officials.

Any entertainment of a Government Official with a value in excess of $20 requires approval from our Chief Compliance Officer.

For further information and guidance regarding Gifts and Entertainment, please see the Gifts and Entertainment Statement.

## Political and Charitable Contributions

Political contributions made by or on behalf of the Company within the United States are allowed only when such contributions are made under the Cognizant's Political Action Committee. Outside the United States, political contributions are not permitted by, or on behalf of, the Company unless approved in advance by our Chief Legal Officer/General Counsel. If you plan on engaging in any political activities on behalf of the Company or making a political contribution on behalf of the Company in the United States, you must contact the Legal Department prior to taking any action.

A charitable contribution is any payment or other support given to a charitable organization or to an entity organized to provide a public benefit. Cognizant only works with charities that have been vetted to ensure that they are legitimate, reputable and will not be used as a conduit for an improper payment.

All of Cognizant's charitable contributions must be:

* Reasonable in nature and amount;

* Permissible under all applicable laws and regulations;

* Provided in a manner that would not embarrass Cognizant if publicly disclosed;

* Given openly with no appearance of an improper purpose;

- 34 -

- Given without expecting anything in return; and

- Accurately recorded in Cognizant's books and records.

For more information about Cognizant's Charitable contributions and related requests, please see the Company's Guidelines on Charitable Contributions.

\* \* \*

## Books, Records & Internal Controls

Cognizant is required to maintain records that accurately reflect its business transactions. Associates who conduct business on Cognizant's behalf must ensure that all transactions (no matter how small) are recorded promptly and accurately, contain sufficient detail, and are supported by accessible documentation. Never misconstrue or mislabel a transaction in our books and records.

## Violations

A violation of anti-corruption laws, the Code, this Statement, or its related procedures is a serious matter and can result in criminal or civil penalties against Cognizant and the individual involved in the violation, as well as harm to Cognizant's reputation.

Associates involved in a violation will be subject to appropriate discipline, up to and including termination.

Any violation of law, the Code, or this Statement may result in a loss of incentive compensation, bonuses, or other awards, to the extent permitted by law.

## Mandatory Reporting of Violations & Guidance on Compliance

Associates have a responsibility to report suspected violations of this Statement, the Code, or of any applicable law. Cognizant is committed to ensuring that an individual does not face retaliation for reporting such concerns. To report concerns or ask questions Associates may contact:

- Any member of the Cognizant Legal Department

- Our Chief Compliance Officer:

  - By email: chiefcomplianceofficer@cognizant.com

  - By fax: 201-801-0243

  - By mail: Cognizant Technology Solutions

    Attn: Chief Compliance Officer
    Glenpointe Centre West
    500 Frank W. Burr Boulevard
    Teaneck, New Jersey 07666

  - Our Chief Legal Officer/General Counsel

  - Our Cognizant Compliance Helpline

The Cognizant Compliance Helpline is serviced by a third-party provider and is available by phone or online 24 hours a day, 7 days a week. Reports of violations or concerns may be made anonymously, where local laws allow. However, you are encouraged to identify yourself when making a report, so that additional information can be obtained if needed. Whenever possible and permitted by law, your identity will be kept strictly confidential. The Compliance Helpline also features a Question Manager, where an Associate may seek advice.

To access the Compliance Helpline via the internet, go to www.cognizant.com/compliance-helpline and follow the instructions for submitting a report.

To make a report by telephone, dial the number specific to your country and follow the prompts:

- U.S. and Canada: 1-866-824-4897

- *India*: AT&T Direct Access Code 000-117 followed by 866-824-4897

- UK: AT&T Direct Access Code 0-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 (or 0-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) followed by 66-824-4897

- • All other locations: Use the appropriate access code for your country, followed by 866-824-4897

## C.    The False and Misleading 2014 and 2015 Sustainability Reports

55.    Nevertheless, in breach of their fiduciary responsibilities, between at least June 2015 and August 2016, Defendants caused Cognizant to publicly release and widely disseminate materially false and misleading annual Sustainability Reports. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮  For example, in June 2015, Cognizant published its 2014 Sustainability Report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮  In the 2014 Sustainability Report, Defendants caused Cognizant to state that it had performed comprehensive audits of anti-corruption compliance and had discovered "no incidents" of corruption.  Additionally, in the 2014 Sustainability Report, Defendants caused the Company to state that significant ethics and anti-corruption training was provided to Cognizant employees.

56.    In particularly, the 2014 Sustainability Report misrepresented, in relevant part, as follows:

**SO 3 Training on Anti-Corruption**.

In 2014, we introduced role based anti-corruption training to supplement the anti-corruption provisions of the general ethics training

- 37 -

our employees received. We delivered 331,114 hours of Code of Ethics training through eLearning in 2014. We also delivered live Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines. Our formal learning was supplemented in 2014 by education campaigns featuring games, quizzes and prizes.

Additionally, our Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption.

**SO4 Actions taken in response to incidents of corruption**.

*No incidents reported in 2014*.

57.    Similarly, in August 2016, Cognizant published its 2015 Sustainability Report, ██████████████████████████████████████████ ██████████  In the 2015 Sustainability Report, Defendants caused Cognizant to state that it had performed audits of anti-corruption compliance and had discovered "no incidents" of corruption. Moreover, Defendants caused the Company to state that significant ethics and anti-corruption training was provided to its employees.

58.    In particular, the 2015 Sustainability Reports misrepresented, in relevant part, as follows:

> **G4-56 The organization's values, principles, standards and norms of behavior such as codes of conduct and codes of ethics**.
>
> *       *       *
>
> ***Cognizant treats reports of misconduct seriously***. All reports are reviewed by the Chief Compliance Officer, who appoints a responsible person as appropriate to conduct an informal inquiry or a formal investigation. If a violation of our Standards has occurred, appropriate disciplinary action will be taken against individuals involved as

permitted by local laws.  Additional steps will be taken if an alleged violation involves an Executive Officer or Board Member.

Today's dynamic global marketplace demands that we achieve the highest standards of behavior.  It is therefore critical that all of us at Cognizant make business decisions that align with our ethical principles. This means, in part, that we comply with all applicable anti-corruption laws, rules, and regulations wherever we conduct business.

*     *     *

## SUB-CATEGORY: SOCIETY

### Aspect: Anti-corruption

### G4-SO3 Total number and percentage of operations assessed for risks related to corruption and the significant risks identified

*There were no incidents reported in 2015.*

### G4-SO4 Communication and training on anti-corruption policies and procedures

We delivered 689,288 hours of Code of Ethics training through eLearning in 2015.  We also delivered live Code of Ethics trainings to targeted audiences of over 203,947 associates in India.  Our formal learning was supplemented in 2015 by education campaigns featuring games, quizzes and prizes. The percentage of Associates completing the online Code of Ethics training was 94%.  Anti-Corruption training was provided for 500 hours and delivered for selected associates in Administration, Procurement, Sales & Marketing, Finance and other support Functions.

Additionally, our Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption.

### G4-SO5 Confirmed incidents of corruption and actions taken

*There were no incidents reported in 2015.*

- 39 -

**D.      Defendants' Knowledge and Breaches of Their Fiduciary Duties**

59.     

60.

61.

4844-2016-2754.v2-8/3/20



62.

63.



64.

4844-2016-2754.v2-8/3/20



**E.     The Truth Emerges**

65. ████████████████ the bribery scheme continued unabated in India until late September 2016. Then, on September 30, 2016, Defendants were forced to reveal that the Company had commenced an internal investigation into Cognizant's compliance with the FCPA, including whether senior Cognizant insiders made improper payments relating to facilities in India in violation of the FCPA or other applicable laws. On the same date, the Company revealed that on September 27, 2016, its President, Defendant Coburn, had suddenly resigned.

66. More specifically, Defendants admitted in the Company's Current Report on SEC Form 8-K, in relevant part, as follows:

> **Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers**.

- 43 -

As announced in the press release attached hereto as Exhibit 99.1 and incorporated by reference into this Item 5.02, on September 27, 2016, Gordon Coburn resigned from his position as President of Cognizant Technology Solutions Corporation ("Cognizant" or the "Company") . . . .

\*     \*     \*

The Company is conducting an internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act and other applicable laws. The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel, and is currently focused on a small number of Company-owned facilities. The Company has voluntarily notified the United States Department of Justice (the "DOJ") and United States Securities and Exchange Commission (the "SEC") and is cooperating fully with both agencies. The internal investigation is in its early stages, and the Company is not able to predict what, if any, action may be taken by the DOJ, SEC or any governmental authority in connection with the investigation or the effect of the matter on the Company's results of operations, cash flows or financial position.

67.    Just as Cognizant shareholders were digesting these damaging disclosures, Defendants stunned them again on November 7, 2016. In the Company's Quarterly Report on SEC Form 10-Q for the third quarter of 2016, Defendants finally admitted that the Company's internal investigation indicated that: (i) members of Cognizant's senior management may have been involved in the bribery scheme; (ii) that the internal investigation had uncovered more than $5 million in improper payments; and (iii) that Cognizant had a material weakness in its internal control over financial reporting from at least December 31, 2015 to September 30, 2016.

68.    More specifically, the Form 10-Q stated, in relevant part, as follows:

- 44 -

**Internal Investigation and Related Matters**

On September 30, 2016, we disclosed that we are conducting an internal investigation into whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act, or FCPA, and other applicable laws. In September 2016, we voluntarily notified the U.S. Department of Justice, or DOJ, and Securities and Exchange Commission, or SEC, and are cooperating fully with both agencies. The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel. . . .

*Specifically, we did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India.* . . . Based on the results of the investigation to date, the members of senior management who may have participated in or failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

As a result of the foregoing, we have determined that a material weakness existed as of December 31, 2015, and continues to exist in subsequent interim periods, in our internal control over financial reporting.

69.     Later, on March 1, 2017, Defendants admitted in Cognizant's 2016 Annual Report on SEC Form 10-K that the bribery scheme had been going on since at least 2010, that the scheme potentially involved several members of Cognizant's senior management, and that the scheme resulted in several expensive-to-defend federal securities actions being filed against Cognizant and members of senior management. Specifically, the 2016 Form 10-K stated, in relevant part, as follows:

- 45 -

We are conducting an internal investigation focused on whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the FCPA and other applicable laws. . . . *To date, the investigation has identified a total of approximately $6 million in payments made between 2010 and 2015 that may have been improper.*

*   *   *

As previously disclosed, the Company is conducting an internal investigation focused on whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act, or FCPA, and other applicable laws. In September 2016, we voluntarily notified the Department of Justice, or DOJ, and the Securities and Exchange Commission, or SEC, and are cooperating fully with both agencies. The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel. *To date, the investigation has identified a total of approximately $6 million in payments made between 2010 and 2015 that may have been recorded improperly.* . . . Based on the results of the investigation to date, the members of senior management who may have participated in or been aware of the making of the identified potentially improper payments and failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

70.    In the wake of these revelations, Cognizant's stock price collapsed from $55.00 to $47.71 per share, or more than 13%, wiping out more than $4.4 billion in once valuable shareholders' equity.

71.    Then, on February 15, 2019, following its investigation into Cognizant's FCPA compliance, the SEC concluded that Cognizant violated the FCPA and ordered the Company to pay $25,167,368 in fines and penalties. Specifically, the SEC found that:

- 46 -

21.   Cognizant paid bribes to an Indian government official to induce that official to direct that a permit be issued to facilitate the completion of a construction project. Cognizant made use of the means and instrumentalities of interstate commerce by hosting video conferences at which American executives participated in formulating the scheme and by exchanging email messages to and from the United States to approve the concealing of the payment. Two U.S. senior executives at Cognizant took active steps to advance the scheme, and Cognizant is liable for their conduct by *respondeat superior*. As a result, Cognizant violated Exchange Act Section 30A.

*     *     *

22.   Cognizant violated Exchange Act Section 13(b)(2)(A) by falsely characterizing illicit payments to government officials as legitimate business expenses in its books and records.

*     *     *

24.   Cognizant violated Section 13(b)(2)(B) by failing to devise and maintain a sufficient system of internal accounting controls at its corporate headquarters and at Cognizant India. Cognizant's system for handling contractor change orders in India permitted managers to conceal bribe payments through the manipulation of bogus construction charges. The company's procurement process did not include an effective review of the disbursement of funds for change orders. Nor did it include an effective review of the application or renewal of facility permits and licenses. Cognizant also did not adequately enforce its corporate policy against making improper payments to government officials. And it failed to provide reasonable assurances that its Indian subsidiary maintained accurate and complete records of transactions involving payments to government officials.

Order Instituting Cease-And-Desist Proceedings Pursuant to Section 21C of the

Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-And-Desist

Order, at 5-6, *In the Matter of Cognizant Tech. Solutions Corp.*, Adm. Proc. File No.

3-19000 (Feb. 15, 2019) (the "SEC CDO").

- 47 -

## DAMAGES TO THE COMPANY

72.     As a result of Defendants' fiduciary failures, Cognizant has suffered, and will continue to suffer, substantial damages, injuries, and losses.  For example, the Company has been named as a primary defendant in a costly and expensive-to-defend class-action lawsuit for violations of the federal securities laws pending before the U.S. District Court for the District of New Jersey ("Securities Action").  *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509 (D.N.J.).  On August 8, 2018, the Hon. William H. Walls, U.S.D.J., denied the motion to dismiss the §10(b)(5) federal securities fraud claims against Cognizant in the Securities Action, finding that "Plaintiffs have adequately alleged a material bribery scheme" and that, as a result, certain statements "touting the benefits of the SEZ licenses" published in the Company's SEC filings and Sustainability Reports were false and misleading.  *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509-WHW-CLW, 2018 WL 3772675, at *17 (D.N.J. Aug. 8, 2018).

73.     In particular, the District Court held, in relevant part, as follows:

### 2.     Sustainability Reports

Unlike the Code of Conduct and Anticorruption Policy*, the Court finds statements in the Sustainability Reports to be materially false and misleading*.  The 2014 Sustainability Report states that Cognizant "delivered 333,114 hours of Code of Ethics training through eLearning in 2014," and "delivered Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines."  Am Compl. ¶ 129.  The 2014 Sustainability Report gave further detail about its training programs, and went on to state that "our Enterprise Risk Management

- 48 -

group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption." ***The 2014 Report also stated that there were "no incidents [of corruption] reported."*** *Id.* ¶¶ 129, 136. ***The 2015 Sustainability Report also stated that there were "no incidents [of corruption] reported,"*** and additionally that "no [significant risks related to corruption] reported." *Id.* ¶ 136. These are not aspirational statements of company policy, ***but statements of fact and representations about the current state of affairs*** that are capable of falsity and upon which a reasonable investor may rely.

***The Court finds that Plaintiffs have adequately alleged that the statements in the Sustainability Reports about anticorruption training were materially false and misleading.*** At the time that Cognizant was making statements highlighting its anticorruption training, it was allegedly engaged in a bribery scheme involving members of senior management. These statements are misleading for this reason alone. *See Petrobras*, 116 F. Supp. 3d at 380-81 (finding statements regarding effectiveness of internal controls misleading because company was engaged in extensive corruption at the time of the statements).

Further, Plaintiffs have put forth additional allegations demonstrating the falsity of specific statements in the Sustainability Reports. The Sustainability Reports reported that there were "no incidents [of corruption] reported" and "no [significant risks related to corruption] reported." Am. Compl. ¶¶ 129,136. These statements were made in August 2016 June 2015, after the conclusion of the 2015 Audit wherein FE1 discovered red flag payments made in connection with SEZ licenses. FE1 considered the payments to be suspicious enough to warrant further investigation, and upon such investigation, was met with unsatisfactory answers from Cognizant employees. *Id.* ¶ 70. FE1 then reported the findings of the audit to his superior, and the information was further emailed to Misty Pederson (not a named Defendant), one of Cognizant's most senior compliance executives. *Id.* ¶ 73. It is plausible that these payments constituted "corruption" or a "risk of corruption," and that FE1 "reported" them to the person to whom he was instructed to report. Because the 2015 Audit had been completed before either of the Reports was published, it is plausible that this reporting occurred before the statements were made.

- 49 -

*Id.* at *19-*20. In the same Order, the District Court upheld the §20(a) "controlling person" liability claim against Defendants Coburn, finding, in relevant part, as follows:

> The Court also finds that the Amended Complaint adequately alleges that Defendant Coburn was a culpable participant, for the reasons that give rise to a strong inference of scienter. . . . The Court therefore . . . denies the motion to dismiss [the Section 20(a) claim] as to Defendant Coburn.

*Id.* at *35.

74.     On June 5, 2020, in a subsequent order denying Cognizant's and Defendants Coburn's and Schwartz's motions to dismiss the Securities Action, the Hon. Esther Salas, U.S.D.J., held in relevant part, as follows:

> ***Cognizant asks this Court to revisit its prior conclusion that Coburn's scienter may be imputed to Cognizant under the doctrine of corporate scienter.*** . . . The doctrine of corporate scienter allows a plaintiff to plead an inference of scienter against a corporate defendant without raising the same inferences required to attribute scienter to an individual defendant.
>
> \*          \*          \*
>
> Judge Walls found that under either the broad approach adopted in the Second and Seventh Circuits or the "middle ground" approach employed by the Sixth Circuit, Coburn's scienter may be imputed to Cognizant. . . .
>
> Now, Cognizant asks this Court to adopt the narrow approach followed in the Fifth and Eleventh Circuits to conclude that because the allegations fail to establish that Coburn or Schwartz made any material misstatements, their scienter may not be imputed to Cognizant. . . . ***For the reasons stated below, the Court concludes that scienter may be imputed to Cognizant under all three approaches to the corporate scienter doctrine that currently divide the Circuit Courts.***
>
> \*          \*          \*

- 50 -

> *Here, the Court finds that Plaintiffs adequately allege how Coburn and Schwartz had "power or influence" over Cognizant's operations in addition to alleging the executive positions they held....* Thus, the Court finds that the allegations adequately state how Coburn "played a role in the alleged nondisclosures."
>
> Similarly, Plaintiffs allege that Schwartz actively participated on the videoconference calls when the scheme was conceived, specifically by advising co-conspirators that reimbursement payments to L&T for the bribe "should not stand out in the change order request.". . . *Accordingly, the Court finds that these allegations are sufficient to allege that Schwartz was a "control person" under Section 20(a).*
>
> *       *       *
>
> For the foregoing reasons, the Court DENIES the Defendants' motions to dismiss the SAC.

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-6509 (ES) CLW, 2020 WL 3026564, at *24,*33-*34 (D.N.J. June 5, 2020).

75.     Additionally, the Company paid over $25 million in fines and penalties for violating the FCPA and incurred over $60 million more in investigative costs and expenses. The Company also has, or will, incur millions more in costs arising from the implementation of the remedial measures contained in the SEC CDO as well as be subjected to a "liar's discount" that will impact the Company's goodwill and public image.

76.     Further, Cognizant's reputation as a good corporate citizen is in ruins and its goodwill is most likely irreparably impaired. Moreover, while under the Defendants' stewardship, Cognizant wastefully spent approximately $42 million to repurchase 650,000 shares of Cognizant stock on the open market at prices artificially

- 51 -

inflated by Defendants' false and misleading statements about the Company's business, operations, and prospects.

77.    Defendants, however, have not fared nearly so badly.  On the contrary, they have pocketed over $23,589,201 in director and executive compensation not justified by Cognizant's performance while under their stewardship.  Moreover, Defendants D'Souza, Klein, Breakiron-Evans, Fox, Mackay, Wendel, Narayanan, Coburn, Schwartz, and McLoughlin have reaped over $80,493,140 in unlawful insider trading proceeds by selling 1,331,237 shares of their personal Cognizant stock based on adverse material non-public information.

78.    This notwithstanding, the Cognizant Board has not – and will not – bring legal action against the Directors responsible for this debacle.  Therefore, by this action Plaintiffs seek to vindicate Cognizant's rights against its wayward fiduciaries.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

79.    Plaintiffs incorporate ¶¶1-78.

80.    Plaintiffs bring this action for the benefit of Cognizant to redress injuries suffered, and to be suffered, by Cognizant due to Defendants' violations of law, as well as the aiding and abetting thereof.  Plaintiffs will adequately and fairly represent the interests of Cognizant in enforcing and prosecuting these derivative claims.  Cognizant is named as a nominal defendant only in this action.

81.    At the time this action was commenced on February 22, 2017, the

Cognizant Board consisted of the following eleven directors: Defendants Abdalla,

D'Souza, Mackay, Weissman, Breakiron-Evans, Fox, Narayanan, Wendel, Chadwick,

Klein, and Patsalos-Fox (together, the Director Defendants).  Plaintiffs have not made

a demand on the present Board to institute this action because such a demand would

be a futile as set forth below.

### A.    The Director Defendants Issued False Reports to Cognizant Shareholders in Breach of Their Fiduciary Duty of Loyalty and, Therefore, Face a Substantial Likelihood of Liability for Damages

82.    The Director Defendants, and again particularly the members of the

Audit Committee, who constitute a majority of the Board,[12] face a substantial

likelihood of liability for their own faithless acts and omissions and wrongdoing.  In

breach of their fiduciary duties, the Director Defendants caused Cognizant to publicly

release and widely disseminate materially false and misleading annual Sustainability

Reports.                                                                    For example, in June 2015, Cognizant

published its 2014 Sustainability Report,

---

[12] The Audit Committee members include Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel, and MacKay. *See supra* ¶89.

████████████████████████████████ In the 2014 Sustainability Report, the Director Defendants caused Cognizant to state that it had performed comprehensive audits of anti-corruption compliance and had discovered "no incidents" of corruption. Additionally, in the 2014 Sustainability Report, the Director Defendants caused the Company to state that significant ethics and anti-corruption training was provided to Cognizant employees.

83.    Similarly, in August 2016, Cognizant published its 2015 Sustainability Report, ████████████████████████████████████████ ██████████████████████ In the 2015 Sustainability Report, the Director Defendants caused Cognizant to state that it had performed audits of anti-corruption compliance and had discovered "no incidents" of corruption. Moreover, the Director Defendants caused the Company to state that significant ethics and anti-corruption training was provided to its employees.

84.    ██████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

85.     As Cognizant's directors and top officers, the Director Defendants owed Cognizant fiduciary duties of candor, good faith, and loyalty.  Rather than speak the entire truth when they said, or caused to be said, anything about the Company, the Director Defendants breached their fiduciary duties of candor, good faith, and loyalty by disseminating false and misleading statements about the Company's FCPA and anti-corruption legal compliance, thereby exposing Cognizant to liability and damages to Cognizant shareholders for violating the federal securities laws, as well as costly investigations and FCPA regulatory proceedings.  If the Director Defendants were to bring a suit on behalf of Cognizant to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability.  Therefore, because the Director Defendants are interested in the outcome of this litigation, the Cognizant Board cannot fairly or objectively consider a pre-suit demand.  As such, a pre-suit demand on the Board is futile and excused.

86.     Moreover, the Director Defendants owed a duty to, in good faith and with due diligence, to exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead,

- 55 -



If the Director Defendants were to bring a suit on behalf of Cognizant to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. This is something they will not do. For this reason, a pre-suit demand on the Cognizant Board is futile.

87.     Further, the Director Defendants face a substantial likelihood of liability for breaching their fiduciary duties by allowing Defendants Coburn and Schwartz to resign, instead of terminating and bringing claims against them. Specifically, the Director Defendants, in breach of their fiduciary duties, failed, among other things, to claw back undeserved pay and bonuses Coburn and Schwartz received during the years that their compensation was based in part on inflated growth and success stemming from the bribery scheme that Coburn and Schwartz knew about and participated in. The Director Defendants' decision is not protected by the business judgment rule, constitutes a breach of their fiduciary duties, and is a waste of valuable corporate assets. Accordingly, demand upon the Director Defendants is futile.

**B.     Director Defendants Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel and Mackay as Audit Committee**

- 56 -

**Members Are Not Disinterested as They Face a Substantial Likelihood of Liability**

88.     Director Defendants Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel, and Mackay served on the Audit Committee of the Board, the body principally responsible for oversight of the Company's FCPA compliance and annual and quarterly SEC filings on Form 10-K and Form 10-Q and earnings press releases on Form 8-K. In this capacity Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel, and Mackay reviewed and approved Cognizant's annual and quarterly reports on Form 10-K and Form 10-Q and earnings press releases on Form 8-K. Yet, while under their stewardship, the Company issued the materially false and misleading 2014 and 2015 Sustainability Reports praising Cognizant's anti-corruption law compliance. As a result, defendants Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel, and Mackay are liable for breaching their fiduciary duties of loyalty. Because Defendants Klein, Abdalla, Breakiron-Evans, Chadwick, Wendel, and Mackay are interested in the outcome of this litigation, a pre-suit demand on them would be futile and is excused.

**C.     Directors Defendants Klein, Abdalla, Fox, Breakiron-Evans and Patsalos-Fox as Corporate Governance Committee Members Are Not Disinterested as They Face a Substantial Likelihood of Liability**

89.     Director Defendants Klein, Abdalla, Fox, Breakiron-Evans, and Patsalos-Fox served on the Corporate Governance Committee of the Board, the body

- 57 -

principally responsible for oversight of the Company's management of key risks, including legal and regulatory compliance. In this capacity, Klein, Abdalla, Fox, Breakiron-Evans, and Patsalos-Fox were responsible for the oversight of Cognizant's compliance with anti-corruption and insider trading laws. Nevertheless, while under their stewardship, the Company issued the materially false and misleading 2014 and 2015 Sustainability Reports praising Cognizant's anti-corruption law compliance. As a result, Director Defendants Klein, Abdalla, Fox, Breakiron-Evans, and Patsalos-Fox are liable for breaching their fiduciary duties of loyalty. Because Defendants Klein, Abdalla, Fox, Breakiron-Evans, and Patsalos-Fox are interested in the outcome of this litigation, a pre-suit demand on them would be futile and is excused.

> **D.      Director Defendants D'Souza, Klein, Breakiron-Evans, Fox, Narayanan, Wendel, and Mackay Face a Substantial Likelihood of Liability Because of Their Suspicious Insider Sales**

90.     While Cognizant shares traded at artificially prices, Director Defendants D'Souza, Klein, Breakiron-Evans, Fox, Narayanan, Wendel, and Mackay collectively sold 1,076,237 shares of their personal Cognizant holdings for insider trading proceeds of $64,640,355. These Director Defendants sold their Cognizant shares without first disclosing adverse material non-public information about the ineffectiveness of Company's anti-corruption legal compliance and the Company's bribery scheme in India. Director Defendants D'Souza, Klein, Breakiron-Evans, Fox, Narayanan, Wendel, and Mackay therefore face a substantial likelihood of liability for

- 58 -

breaching their fiduciary duty of loyalty and are unable to fairly and objectively consider any demand that plaintiffs may have made.

### E. Director Defendants D'Souza and Narayanan Are Not Independent and Therefore Cannot Impartially Consider a Demand

91.    Director Defendants D'Souza and Narayanan are not independent directors, as the Board admitted in the Company's 2016 Proxy Statement filed with the SEC on April 29, 2016.  In this Proxy Statement, the Board determined that Director Defendants D'Souza and Narayanan are not "independent directors" under the "rules of The NASDAQ Stock Market LLC ('NASDAQ'), which require that, in the opinion of the Board, such person not have a relationship that would interfere with the exercise of independent judgment in carrying out the responsibilities of a Director."  Moreover, Director Defendant D'Souza, as CEO of Cognizant, derived substantially all of his income from his employment with Cognizant.  Therefore, Defendants D'Souza and Narayanan cannot objectively consider a demand to sue themselves for breaching their fiduciary duties to Cognizant because that would expose them to personal liability and/or financial harm.

### F. Director Defendants D'Souza and Weissman's Long-Time Business Entanglements Disable Them from Impartially Considering a Demand

92.    Demand is futile as to Director Defendants D'Souza and Weissman because they have significant business and longtime friendships with Defendant

- 59 -

Coburn and each other.  Defendant Coburn was one of the "senior management" that perpetuated the bribery scheme.  Defendant Coburn worked extensively with Director Defendants D'Souza and Weissman at The Dun & Bradstreet Corporation ("D&B") in the 1990s prior to and during Cognizant's split from D&B in 1995.  Consequently, Defendants D'Souza and Weissman's long-time association with one another, and with Defendant Coburn, prevent them from impartially and independently considering any demand that Plaintiffs may have made to bring suit against themselves and/or Defendant Coburn.

### G.   The Director Defendants Failed to Protect Cognizant's Valuable Assets in Breach of Their Fiduciary Duties and, Therefore, Face a Substantial Likelihood of Liability for Damages

93.   The directors of a Delaware corporation owe the corporation "'an affirmative duty to protect the interests of the corporation.'" *Pfeiffer v. Toll*, 989 A.2d 683, 695 n.3 (Del. Ch. 2010) (quoting 1 Edward P. Welch, et al., *Folk on Del. Gen. Corp. Law* at §141.2.1.2, at GCL-IV-26 (5th ed. 2006)).  As the Delaware Supreme Court recognized in *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985), the directors of a Delaware corporation must "protect the corporate enterprise . . . from harm reasonably perceived, irrespective of its source."

94.   Here, the Director Defendants are duty-bound to protect and preserve Cognizant's claims for damages, contribution, indemnification, and other relief against the Company insiders responsible for the debacle detailed herein.  *See Nagy v.*

- 60 -

*Bistricer*, 770 A.2d 43, 55-56 & n.23 (Del. Ch. 2000) (finding breach of fiduciary duty

claims are assets of a company); *Quadrant Structured Prods. Co., LTD. v. Vertin*, 115

A.3d 535, 548 (Del. Ch. 2015). However, the Director Defendants have not taken

steps to protect and preserve the Company's valuable claims, including those against

Defendants Coburn and Schwartz arising from the bribery scheme in India and/or the

already twice upheld Securities Action.

95.     The Director Defendants' misconduct is antithetical to their affirmative

duty to protect the interests of Cognizant and to refrain from conduct that would injure

the Company. By failing to act, the Director Defendants have failed in their

"fundamental duty and obligation to protect the corporate enterprise." *Unocal*, 493

A.2d at 954. The Director Defendants also have failed to refrain from conduct that

would "'injure the corporation and its stockholders.'" *Pfeiffer*, 989 A.2d at 695 n.3

(citation omitted). Therefore, by virtue of their own actions, the Director Defendants

face a substantial likelihood of liability to Cognizant for failing to protect and preserve

its valuable corporate assets. As a result, a pre-suit demand on the Board is excused.

96.     Plaintiffs have not made any demand on Cognizant shareholders to

institute this action since such demand would be a futile and useless act for several

reasons. First, Cognizant is a publicly traded company with approximately 577

million shares of stock outstanding, held by thousands of individuals and entities

spread throughout the country. Second, making demand on such a number of

shareholders spread throughout the country would be impossible for Plaintiffs who have no way of finding out the names, addresses, or phone numbers of such shareholders. And third, making demand on all shareholders would force Plaintiffs to incur significant expenses, assuming all shareholders could be individually identified.

## COUNT I

### For Breach of Fiduciary Duty Against All Defendants

97.     Plaintiffs incorporate ¶¶1-96.

98.     As Cognizant's directors and top officers, Defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz, Mehta, Chandrasekaran, and McLoughlin owed Cognizant fiduciary duties of candor, good faith, and loyalty.

99.     Defendants violated their duties of candor, good faith, and loyalty. By way of example, while under their stewardship Defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz, Mehta, Chandrasekaran, and McLoughlin, Cognizant issued the 2014 and 2015 Sustainability Reports, which lacked a reasonable factual basis when issued. These reports represented that there were no reported incidents of corruption in 2014 and 2015 when, in fact, members of senior management were orchestrating a bribery scheme in India designed to secure licenses necessary for the Company's operations. ███████████████████████████████████

- 62 -

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

100. As a result of Defendants' fiduciary failures, Cognizant has been damaged.

## COUNT II

### For Corporate Waste Against All Defendants

101. Plaintiffs incorporate ¶¶1-96.

102. By their wrongful acts and omissions, Defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz, Mehta, Chandrasekaran, and McLoughlin wasted Cognizant's valuable corporate assets by, among other things, causing the Company to pay improper compensation, including cash, fees, stock awards, and other compensation, to themselves and other Cognizant insiders who breached their fiduciary duties of loyalty, candor, and good faith owed to Cognizant. Cognizant received no consideration from these improper payments. As a result, Defendants damaged Cognizant and are liable to the Company for corporate waste.

## COUNT III

### For Unjust Enrichment Against All Defendants

103. Plaintiffs incorporate ¶¶1-96.

104. By their wrongful acts and omissions, Defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman,

- 63 -

Wendel, Narayanan, Coburn, Schwartz, Mehta, Chandrasekaran, and McLoughlin were unjustly enriched at the expense and to the detriment of Cognizant without justification.

105.   All the payments and benefits provided to Defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz, Mehta, Chandrasekaran, and McLoughlin were at the expense of Cognizant.  The Company received no benefit from these payments.

106.   Plaintiffs, on behalf of Cognizant, seek restitution from Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT IV

### For Contribution Under Section 21D of the Exchange Act Against Defendants Coburn and Schwartz

107.   Plaintiffs incorporate ¶¶1-96.

108.   This claim is brought derivatively on behalf of Cognizant for contribution against Defendants Coburn and Schwartz under the federal securities laws.

109.   Cognizant is named as a defendant in the Securities Action, which asserts claims against the Company violation of §10(b) of the Exchange Act.  The District Court in the Securities Action has already twice upheld the shareholder plaintiffs'

- 64 -

claims for securities fraud against Cognizant based on the material roles played by Defendants Coburn and Schwartz in the Company's bribery scheme in India and non-disclosures regarding Cognizant's anti-corruption controls and legal compliance.

110.   As officers of Cognizant, Defendants Coburn and Schwartz had the power and/or ability to control or influence the Company's conduct that violated §10(b) of the Exchange Act and SEC Rule 10b-5. Indeed, the District Court has held as much when ruling on the motions to dismiss filed in the Securities Action.

111.   Cognizant is entitled to contribution from Defendants Coburn and Schwartz in connection with all such claims that have been, are, or may be asserted against Cognizant in of the Securities Action. Therefore, Plaintiffs, on behalf of Cognizant, seek contribution from Defendants Coburn and Schwartz, under §21D of the Exchange Act, 15 U.S.C. §78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

**COUNT V**

**For Contribution and Indemnification
Against Defendants Coburn and Schwartz**

112.   Plaintiff incorporates ¶¶1-96.

113.   This claim is brought derivatively on behalf of Cognizant for contribution and indemnification against Defendants Coburn and Schwartz under state law.

114.   Cognizant is named as a defendant in the Securities Action, which asserts claims against the Company for violation of §10(b) of the Exchange Act. The District

- 65 -

Court in the Securities Action has already twice upheld the shareholder plaintiffs' claims for securities fraud against Cognizant based on the material roles played by Defendants Coburn and Schwartz in the Company's bribery scheme in India and non-disclosures regarding Cognizant's anti-corruption controls and legal compliance.

115.   As officers of Cognizant, Defendants Coburn and Schwartz had the power and/or ability to control or influence the Company's conduct at issue in the Securities Action. Likewise, Defendants Coburn and Schwartz had the power and/or ability to control or influence the bribery scheme in India that exposed Cognizant to tens of millions of dollars in damages arising from investigations and regulatory proceedings into the Company's compliance with the anti-corruption laws.

116.  Cognizant is entitled to contribution and indemnification from Defendants Coburn and Schwartz in connection with all such claims that have been, are, or may be asserted against Cognizant in the Securities Action. Cognizant is also entitled to contribution and indemnification from Defendants Coburn and Schwartz in connection with all such claims that have been, are, or may be asserted against Cognizant by virtue of the bribery scheme in India. Therefore, Plaintiffs, on behalf of Cognizant, seek contribution and indemnification from Defendants Coburn and Schwartz for damages suffered by Cognizant as a result of their misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.      Against Defendants, individually and severally, and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duty, corporate waste, unjust enrichment, and related misconduct;

B.      Directing Cognizant to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Cognizant and its shareholders from a repetition of the damaging events described herein;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and the state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiffs on behalf of Cognizant have an effective remedy;

D.      Awarding to Cognizant restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.      Awarding Plaintiffs the cost and disbursement of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

- 67 -

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:  August 3, 2020

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
MATTHEW F. GATELY


*/s/ Matthew F. Gately*
MATTHEW F. GATELY

250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel for Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
BENNY C. GOODMAN III
ERIK W. LUEDEKE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN
10205 North Pennsylvania Avenue
Oklahoma, OK 73120
Telephone: 405/235-1560
405/239-2112 (fax)

Lead Counsel for Plaintiffs

- 68 -

KANTROWITZ GOLDHAMER,
GRAIFMAN, P.C.
GARY S. GRAIFMAN
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Telephone: 845/365-2570

CAVANAGH & O'HARA, LLP
BRITT W. SOWLE
101 West Vandalia Street, Suite 245
Edwardsville, IL  62025
Telephone:  618/692-5250
618/692-5254 (fax)

Counsel for Plaintiffs Josh Schaufelberger,
Brian Hayden, Tim Keeley, Robert
Calhoun, Glyn Ramage, Robert Green,
Steven Tyler and Michael Testerman, in
their capacities as Trustees of the
Employers and Laborers Locals 100 and
397 Pension Fund

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/408-8062 (fax)

Counsel for Plaintiff Michael S. Graniero,
III

GARDY & NOTIS, LLP
JENNIFER SARNELLI
JAMES S. NOTIS
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Telephone:  201/567-7377

- 69 -

HYNES & HERNANDEZ, LLC
MICHAEL J. HYNES
LIGAYA T. HERNANDEZ
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: 484/875-3116

BRAGAR EAGEL & SQUIRE, P.C.
MELISSA A. FORTUNATO
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: 212/308-5858

Counsel for Plaintiff James B. Hoy, as
Trustee and Beneficiary of the James B.
Hoy & Marjorie A. Hoy TTEES FBO
Marjorie A. Hoy Rev Liv Trust

## VERIFICATION

I, John Lautzenheiser, declare that I have reviewed the First Amended Complaint ("Amended Complaint") prepared on behalf of Cognizant Technology Solutions Corporation [NASDAQ: CTSH], and I authorize its filing. I have reviewed the allegations made in the Amended Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder and have been a continuous holder of Cognizant Technology Solutions Corporation common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Amended Complaint was occurring.

July     27 , 2020
Date

JOHN LAUTZENHEISER

**VERIFICATION**

I, Glyn Ramage, acting on behalf of and with the consent of the Trustees of the Employers & Laborers Locals 100 and 397 Pension Fund, hereby verify that I am familiar with the allegations in the First Amended Consolidated Verified Shareholder Derivative Complaint ("Complaint"), and that I have authorized the filing of the Complaint and that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 29 day of July, 2020.

EMPLOYERS & LABORERS LOCALS 100 AND 397 PENSION FUND

By: _____

Title: ADMINISTRATOR

1 of 2