Daniel P. Roeser (*pro hac vice*)
Charles A. Brown
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: 212.813.8800
Fax: 212.355.3333
droeser@goodwinlaw.com
cbrown@goodwinlaw.com

*Attorneys for Defendants Zein Abdalla,*
*Maureen Breakiron-Evans, Jonathan*
*Chadwick, Ramakrishnan*
*Chandrasekaran, Francisco D'Souza,*
*John N. Fox, Jr., John E. Klein, Leo S.*
*Mackay, Jr., Karen McLoughlin,*
*Rajeev Mehta, Lakshmi Narayanan,*
*Michael Patsalos-Fox, Robert E.*
*Weissman, and Thomas M. Wendel and*
*Nominal Defendant Cognizant*
*Technology Solutions Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION DERIVATIVE LITIGATION | No. 2:17-cv-01248-KM-CLW |
| | Return Date:  June 6, 2022 |
| This Document Relates To: | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| ALL ACTIONS. | |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ..................................................................................4

I.      Cognizant's Anti-Corruption Controls and Policies .......................................4

II.     Cognizant's Discovery and Self-reporting of Possible FCPA Violations ...................................................................................7

III.    The DOJ's and SEC's Recognition of Cognizant's Self-reporting and Cooperation...................................................................................8

IV.     Plaintiffs' Claims and Allegations................................................9

ARGUMENT ...................................................................................11

I.      THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT DEMAND WAS EXCUSED. ...............................................................................11

        A.      Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for a Breach of Fiduciary Duty.............................................14

                1.      Plaintiffs Do Not Adequately Allege a Caremark Claim – "Possibly the Most Difficult Theory in Corporation Law." ...................................................................................15

                        a.      Plaintiffs' Complaint ██████████████ ████████████ That Cognizant's Board Implemented Internal Controls....................................17

                        b.      Plaintiffs' Complaint ██████████████████ ████████████ That Cognizant's Board Did Not Consciously Disregard Red Flags. ..........................18

                2.      Plaintiffs Do Not Adequately Allege That Service on Board Committees Creates a Substantial Likelihood of Liability for a Breach of Fiduciary Duty. .................................28

                3.      Plaintiffs Do Not Adequately Allege That Directors' Stock Sales Create a Substantial Likelihood of Liability for a Breach of Fiduciary Duty..................................................30

4.      Plaintiffs Do Not Adequately Allege That Cognizant's Repurchase Program Creates a Substantial Likelihood of Liability for a Breach of Fiduciary Duty. ..................................32

B.      Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Corporate Waste. ..........................................................33

C.      Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Unjust Enrichment. ..........................................................34

D.      Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Contribution and Indemnification..............................36

E.      Plaintiffs Do Not Adequately Allege That the Cognizant Directors Were Not Otherwise Disinterested and Independent. .........37

1.      Plaintiffs Do Not Adequately Allege that Defendants D'Souza and Narayanan Were Not Disinterested and Independent Based on Their Status under NASDAQ Rules..........................................................................37

2.      Plaintiffs Do Not Adequately Allege that Defendants D'Souza and Weissman Were Not Disinterested and Independent Based on Their Business Relationships. ..............38

CONCLUSION ....................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

In re Adolor Corp. Derivative Litig.,
  Civ. No. 04–3629, 2009 WL 1325738 (E.D. Pa. May 12, 2009) ......................27

Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,
  845 A.2d 1040 (Del. 2004) ...................................................................39

Blasband v. Rales,
  971 F.2d 1034 (3d Cir. 1992) ......................................................12, 13

In re Boeing Co. Derivative Litig.,
  C.A. No. 2019-0907, 2021 WL 4059934 (Del. Ch. Sept. 7, 2021) ...................36

Brautigam v. Blankfein,
  8 F. Supp. 3d 395 (S.D.N.Y. 2014) ...................................................25

Brehm v. Eisner,
  746 A.2d 244 (Del. 2000) ............................................................25, 33

In re Camping World Holdings, Inc. Stockholder Derivative Litig.,
  C.A. No. 2019-0179-LWW, 2022 WL 288152 (Del. Ch. Jan. 31, 2022) ..........26

In re Caremark Int'l Derivative Litig.,
  698 A.2d 959 (Del. Ch. 1996) ...................................................*passim*

Catholic Med. Mission Bd. v. Ritter,
  Nos. 2:08–cv–00485P, 2:08–cv–00550, 2008 WL 11377666
  (N.D. Ala. Nov. 4, 2008) ..............................................................32

In re Chemed Corp. S'holder Derivative Litig.,
  Civ. A. No. 13-1854, 2019 WL 3215852 (D. Del. Feb. 26, 2019) ....................23

In re Chemed Corp. S'holder Derivative Litig.,
  Civ. A. No. 13-1854, 2015 WL 9460118 (D. Del. Dec. 23, 2015) ...................29

In re Citigroup Inc. S'holder Derivative Litig.,
  964 A.2d 106 (Del. Ch. 2009) ..............................................14, 15, 26

In re Cognizant Tech. Sols. Corp. Sec. Litig.,
  No. 16-cv-06509, 2018 WL 3772675 (D.N.J. Aug. 8, 2018) ...........................28

In re Computer Scis. Corp. Derivative Litig.,
    No. CV 06-05288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007)....................30

Crescent/Mach I Partners, L.P. v. Turner,
    846 A.2d 963 (Del. Ch. 2000) ...........................................................................39

Desimone v. Barrows,
    924 A.2d 908 (Del. Ch. 2007) ...........................................................................29

DiBattista v. Greco,
    C.A. No. 20-590-RGA, 2021 WL 327399 (D. Del. Jan. 31, 2021).............. 25-26

Frank v. Elgamal,
    C.A. No. 6120, 2014 WL 957550 (Del. Ch. Mar. 10, 2014).............................35

Gamco Asset Mgmt., Inc. v. iHeartMedia, Inc.,
    C.A. No. 12312, 2016 WL 6892802 (Del. Ch. Nov. 29, 2016) ........................35

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003) .......................................................18, 24, 28, 30

In re INFOUSA, Inc. S'holders Litig.,
    953 A.2d 963 (Del. Ch. 2007) ...........................................................................39

Jacobs v. Yang,
    No. Civ. A. 206, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004) ..........................38

Ji v. Van Heyningen,
    No. CA 05–273, 2006 WL 2521440 (D.R.I. Aug. 29, 2006)........... 27-28, 29, 31

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991)............................................................................................12

Kanter v. Barella,
    489 F.3d 170 (3d Cir. 2007) ..............................................................................12

King ex rel. Cephalon Inc. v. Baldino,
    409 F. App'x 535 (3d Cir. 2010) .......................................................................28

Marchand v. Barnhill,
    212 A.3d 805 (Del. 2019) ..................................................................................16

In re NAHC, Inc. Sec. Litig.,
  306 F.3d 1314 (3d Cir. 2002) ..............................................................11

Nemec v. Shrader,
  991 A.2d 1120 (Del. 2010) .................................................................35

In re NutriSystem, Inc. Derivative Litig.,
  666 F. Supp. 2d 501 (E.D. Pa. 2009).................................................. 30-31, 32, 38

Okla. Firefighters Pension & Ret. Sys. v. Corbat,
  C.A. No. 12151, 2017 WL 6452240 (Del. Ch. Dec. 18, 2017)........ 20, 21, 23-24

Orman v. Cullman,
  794 A.2d 5 (Del. Ch. 2003) ................................................................39

Postorivo v. AG Paintball Holdings, Inc.,
  Civ. A. Nos. 2991, 3111, 2008 WL 553205 (Del. Ch. Feb. 29, 2008)...............25

In re Qualcomm Inc. FCPA Stockholder Derivative Litig.,
  C.A. No. 11152, 2017 WL 2608723 (Del. Ch. June 16, 2017).................*passim*

Rattner v. Bidzos,
  No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) .....................27

Richardson v. Ulsh,
  Civ. A. No. 06–3934, 2007 WL 2713050 (D.N.J. Sept. 13, 2007) ...................24

Stiegele ex rel. Viisage Tech., Inc. v. Bailey,
  C.A. No. 05–10677, 2007 WL 4197496 (D. Mass. Aug. 23, 2007) ............30, 31

Stone v. Ritter,
  911 A.2d 362 (Del. 2006) .......................................................2, 16, 18

Strong ex rel. Tidewater, Inc. v. Taylor,
  877 F. Supp. 2d 433 (E.D. La. 2012)...........................................19, 27

In re Synchronoss Techs., Inc. Sec. Litig.,
  Civ. Action No. 17-7173, 2021 WL 1712394 (D.N.J. Apr. 30, 2021) ................................................................................37, 38

Taylor v. Kissner,
  893 F. Supp. 2d 659 (D. Del. 2012)..................................................36

United Food & Com. Workers Union & Participating Food Indus.
    Emp'rs Tri-State Pension Fund v. Zuckerberg,
    262 A.3d 1034 (Del. 2021) ...............................................................................13

In re Walt Disney Co. Derivative Litig.,
    731 A.2d 342 (Del. Ch. 1998) ..........................................................................34

Wood v. Baum,
    953 A.2d 136 (Del. 2008) ..........................................................................27, 29

**Statutes**

8 Del. C. § 220 ...............................................................................................11

Del. Code. Ann. § 102(b)(7) ...........................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................14

Federal Rule of Civil Procedure 23.1 .......................................................11, 12, 25

Defendants Zein Abdalla, Maureen Breakiron-Evans, Jonathan Chadwick, Ramakrishnan Chandrasekaran, Francisco D'Souza, John N. Fox, Jr., Leo S. Mackay, Jr., Karen McLoughlin, Rajeev Mehta, Lakshmi Narayanan, Michael Patsalos-Fox, Robert E. Weissman, and Thomas M. Wendel and Nominal Defendant Cognizant Technology Solutions Corporation ("Cognizant") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Consolidated Verified Shareholder Derivative Complaint (the "Complaint") with prejudice.

## PRELIMINARY STATEMENT

On September 30, 2016, Cognizant publicly disclosed that it had voluntarily notified the United States Department of Justice ("DOJ") and the United States Securities and Exchange Commission ("SEC") of an internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act ("FCPA") and other applicable laws and that Cognizant was cooperating fully with both agencies. (Compl. ¶ 65.)   As night follows day, putative shareholder derivative actions followed.

In the present case, Plaintiffs did not make a demand on Cognizant's Board of Directors (the "Board") to bring suit and instead allege that demand was excused because a lawsuit against Cognizant's former President, Gordon Coburn, and former

1

Chief Legal Officer, Steven Schwartz – who allegedly knew about and participated in the potentially improper payments – would expose the Cognizant directors to significant liability.  (<u>Id.</u> ¶ 87.)  That is absurd.  Cognizant's Board disclosed its investigation and the potentially improper payments to the DOJ and SEC, which already exposed the Cognizant directors to criminal and civil liability if this Court were to credit Plaintiffs' allegations.  Neither the DOJ nor SEC suggested that Cognizant's Board had any liability for the potentially improper payments, much less commenced proceedings against any of the Cognizant directors.  There is no reason to believe that Cognizant's Board would not have brought civil claims against Coburn and Schwartz if the Cognizant directors believed that it was in Cognizant's best interests to do so.

To make matters worse for Plaintiffs, the Complaint principally alleges a <u>Caremark</u> claim, "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  <u>In re Caremark Int'l Derivative Litig.</u>, 698 A.2d 959, 967 (Del. Ch. 1996), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000).  Plaintiffs must show that Cognizant's Board either (1) utterly failed to implement internal controls or (2) consciously disregarded red flags.  <u>See</u> <u>Stone v. Ritter</u>, 911 A.2d 362, 370 (Del. 2006).  Plaintiffs show no such thing.  **First**, Plaintiffs admit that Cognizant had a "plethora" of anti-corruption/bribery controls in place at the time of the potentially improper payments.

2

(Compl. ¶ 53.)  **Second**, Plaintiffs do not allege that the Cognizant directors consciously disregarded any red flags that would have alerted them to the potentially improper payments.  Rather, Plaintiffs admit that, as soon as the Board learned of the potentially improper payments, it acted swiftly and decisively by (1) conducting an internal investigation, (2) self-reporting to the DOJ and SEC, and (3) cooperating fully with both agencies' investigations.  (Id. ¶ 66.)

Plaintiffs' admissions are not surprising.  In February 2019 – after almost two-and-a-half years – the DOJ and SEC concluded their investigations into the potentially improper payments.  The DOJ declined to prosecute Cognizant and instead recognized "Cognizant's voluntary self-disclosure of the matters described above within two weeks of the Board learning of the criminal conduct"; "Cognizant's thorough and comprehensive investigation" and "full and proactive cooperation"; and "the existence and effectiveness of [Cognizant's] pre-existing compliance program."  (Declination Letter, Ex. A at 2.)[1]  The SEC announced its agreement to resolve its investigation and recognized Cognizant's "self-disclosure, cooperation, and remedial efforts," including "voluntarily disclos[ing] . . . misconduct" and "timely shar[ing] the facts developed during the course of an internal investigation by the audit committee of its board."  (SEC Order, Ex. B ¶ 25.)

---

[1] "Ex." refers to exhibits to the Declaration of Charles A. Brown.

In short, Plaintiffs do not and cannot plead any facts to support their allegation that demand was excused – either because Defendants faced a significant likelihood of liability or otherwise.  For all of these reasons and those that follow, this Court should dismiss the Complaint with prejudice.

## BACKGROUND

Cognizant is a leading global professional services company, transforming customers' business, operating and technology models for the digital era. (Cognizant 2016 Form 10-K, Ex. M at 1.)  Its core competencies include: "business, process, operations and technology consulting, application development and systems integration, enterprise information management, application testing, application maintenance, information technology, or IT, infrastructure services, and business process services."  (Id.)  In 2016, the majority of Cognizant's operations and employees were located India.  (Id. at 5.)  Due to its global presence, Cognizant is subject to the FCPA, which prohibits improper payments or offers of improper payments to foreign officials to obtain business or any other benefit.  (Id. at 25.)

## I.    Cognizant's Anti-Corruption Controls and Policies

To ensure compliance with the FCPA, Cognizant "adopted a plethora of formal polic[i]es and policy statements regarding anti-corruption and business ethics." (Compl. ¶ 53.)  Plaintiffs admit:

- Cognizant adopted a formal Anti-Corruption Statement and a detailed Code of Ethics that forbid directors, officers, employees, and other

agents of Cognizant from engaging in bribery and other acts of corruption and mandated the reporting of violations of Cognizant's policies or applicable laws, which could be made via an anonymous Compliance Hotline. (Id. ¶¶ 53-54.)

- Cognizant conducted annual anti-corruption audits and provided its employees with ethics and anti-corruption training, as described in annual Sustainability Reports available to investors. (Id. ¶¶ 55-58.)



- 

## II.   Cognizant's Discovery and Self-reporting of Possible FCPA Violations

On September 30, 2016, Cognizant publicly disclosed that the Audit Committee, with the assistance of outside counsel, was overseeing Cognizant's "internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the [FCPA] and other applicable laws" and that Cognizant had "voluntarily notified the [DOJ] and [SEC] and is cooperating fully with both agencies." (Cognizant Sept. 30, 2016 Form 8-K, Ex. K at Item 8.01; see also Compl. ¶ 66.)   That same day, Cognizant announced the resignation of Coburn from his position as President of the Company.   (Cognizant Sept. 30, 2016 Form 8-K, Ex. K at Item 5.02 & Ex. 99.1; see also Compl. ¶ 66.)

On November 7, 2016, Cognizant provided an update on the status of its investigation, publicly reporting:

> [C]ertain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India. . . . Based on the results of the investigation to date, the members of senior management who may have participated in or failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

(Cognizant Q3 2016 Form 10-Q, Ex. L at 7; see also Compl. ¶ 68.)   As a result of the Audit Committee's investigation, Cognizant identified a total of approximately

$6 million in payments made between 2010 and 2015 that might have been recorded improperly.  (Cognizant 2016 Form 10-K, Ex. M at 30; see also Compl. ¶ 69.)

## III.   The DOJ's and SEC's Recognition of Cognizant's Self-reporting and Cooperation

In February 2019, the DOJ and SEC concluded their investigations into the potentially improper payments.  The DOJ declined to prosecute Cognizant – in part because of "Cognizant's voluntary self-disclosure of the matters described above within two weeks of the Board learning of the criminal conduct"; "Cognizant's thorough and comprehensive investigation" and "full and proactive cooperation"; and "the existence and effectiveness of [Cognizant's] pre-existing compliance program."  (Declaration Letter, Ex. A at 2.)  Around the same time, the SEC announced its agreement to resolve its investigation into the potentially improper payments and credited Cognizant's "self-disclosure, cooperation, and remedial efforts," including "voluntarily disclos[ing] . . . misconduct," "timely shar[ing] the facts developed during the course of an internal investigation by the audit committee of its board," "voluntarily producing and translating documents," and "making current or former employees, including those who needed to travel internationally, available for interviews."  (SEC Order, Ex. B ¶ 25.)

The DOJ and SEC filed a criminal indictment and civil action, respectively, against Coburn and Schwartz.  The DOJ alleged that Coburn and Schwartz "engaged in a scheme to bribe one or more government officials in India to secure and obtain

a planning permit" and (with others) "hid the bribe reimbursement payment within a series of line items in a construction change order request to be paid to the Construction Company, thereby concealing the true nature and purpose of the reimbursement, falsifying Cognizant's books and records, and circumventing its internal controls."  (Indictment, Ex. D ¶¶ 2, 4.)  Similarly, the SEC alleged that Coburn and Schwartz authorized a contractor to pay a "bribe on Cognizant's behalf to a senior government official . . . with influence over the issuance of planning and building permits to obtain a required planning permit for construction of" an office campus in India and, to conceal the potentially improper payment, (among other things) authorized "the company to use fraudulent change orders to disguise Cognizant's reimbursement," "[l]ied to Cognizant's [a]uditor," and "made false or misleading statements or omissions in subcertifications to management representation letters."  (SEC Compl., Ex. C ¶¶ 2, 47, 52, 58.)

Neither the DOJ nor SEC suggested that Cognizant's Board had any liability for the potentially improper payments, much less commenced proceedings against any of the Cognizant directors.

## IV.    Plaintiffs' Claims and Allegations

Plaintiffs bring claims against certain of Cognizant's current and former directors and officers for breach of fiduciary duty, corporate waste, and unjust

enrichment.[2]  Like the DOJ and SEC, Plaintiffs allege that Cognizant's "top insiders . . . engaged in a massive bribery scheme in India designed to secure government construction-related permits and operating licenses for the Company by making improper payments to foreign officials."  (Compl. ¶ 1.)

When this shareholder derivative action was first filed on February 22, 2017, Cognizant's Board consisted of eleven directors, nine of whom were outside directors:  Defendants Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, and Wendel.  (Id. ¶¶ 22-32, 81, 91; see also Cognizant 2016 Proxy Statement, Ex. J at ii.)  The two remaining directors were Defendant D'Souza, who served as Cognizant's CEO, and Defendant Narayanan, who previously had served as Cognizant's CEO and President.  (Cognizant 2016 Proxy Statement, Ex. J at ii.)

Although Plaintiffs ostensibly "bring this action for the benefit of Cognizant to redress injuries suffered, and to be suffered, by Cognizant," they did not make a "demand on the . . . Board to institute this action because" – they claim – "such a demand would be futile."  (Compl. ¶¶ 80-81.)  Plaintiffs' allegations that demand was excused turn on the argument that Defendants face a substantial likelihood of liability because, had "Defendants exercised the diligence required by their fiduciary

---

[2] Plaintiffs also bring claims against Coburn and Schwartz for contribution under Section 21D of the Securities Exchange Act of 1934 and for contribution and indemnification under state law.

duties of candor, loyalty, and good faith and investigated, they would have discovered . . . members of senior management had been, since 2012, engaged in a bribery scheme." (Id. ¶ 7.)

Before filing its putative shareholder derivative action, Plaintiff Laborers Local 100 and 397 Pension Fund made demands for inspection of Cognizant's books and records pursuant to 8 Del. C. § 220.  In response, Cognizant produced (1) its manuals and policies regarding FCPA compliance and (2) Board materials with respect to its compliance with the FCPA in India and the Board's oversight of that compliance.  (Confidentiality Agreement, Ex. P at 1-2.)  Under the terms of Cognizant's production, "any complaint filed by either the Stockholder or Stockholder's Counsel arising out of, relating to, involving, or in connection with the Demands or any Confidential Information shall be deemed to incorporate by reference the entirety of the Confidential Information." (Id. ¶ 8.)  Accordingly, this Court may consider such documents.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002).

## ARGUMENT

## I.    THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT DEMAND WAS EXCUSED.

Plaintiffs are not entitled to bring a derivative action on behalf of Cognizant. Federal Rule of Civil Procedure 23.1 "requires a plaintiff to plead with particularity

either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort was made to demand action from the board." Kanter v. Barella, 489 F.3d 170, 176 (3d Cir. 2007). "The purpose of Rule 23.1's demand requirement is to 'affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such a right.'" Id. (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991)).

Plaintiffs did not make any demand on Cognizant's Board before they filed their complaints, instead contending that a "pre-suit demand on the Board is excused" because the "Cognizant Board has not – and will not – take legal action against the Cognizant insiders responsible for this debacle, despite knowing that their actions harmed the Company and were illegal." (Compl. ¶¶ 12, 95.) Plaintiffs do not and cannot satisfy Rule 23.1's high standard.

"[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused." Kanter, 489 F.3d at 176. This is because the "substantive requirements of demand are a matter of state law." Blasband v. Rales, 971 F.2d 1034, 1047 (3d Cir. 1992). Cognizant is a Delaware corporation and,

therefore, this Court should apply Delaware substantive law to determine whether demand is excused.  (Compl. ¶ 21.)

The Delaware Supreme Court recently adopted a "refined" three-part test to determine whether demand is excused that blends the <u>Aronson</u> test (traditionally used when a plaintiff challenges a particular board decision or transaction) and the <u>Rales</u> test (traditionally used when a plaintiff challenges board inaction).  <u>United Food & Com. Workers Union & Participating Food Indus. Emp'rs Tri-State Pension Fund v. Zuckerberg</u>, 262 A.3d 1034, 1058 (Del. 2021).   The refined test "is consistent with and enhances <u>Aronson</u>, <u>Rales</u>, and their progeny," which "remain good law." <u>Id.</u> at 1059.

When evaluating whether a complaint has pleaded that demand is excused under the "refined" test, a court must consider "on a director-by-director" basis:

1.   "whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand";

2.   "whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand"; and

3.   "whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand."

<u>Id.</u>  As a result, Plaintiffs must allege particularized facts about each individual director to enable this Court to perform a director-by-director analysis and conclude

that a majority of the Board (i.e., at least six directors) could not fairly consider a demand.  See, e.g., In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 133-35 (Del. Ch. 2009).

Plaintiffs do not even attempt to allege that any of the Cognizant directors received a personal benefit from the potentially improper payments.  Therefore, Plaintiffs must plead particularized facts showing that a majority of the Cognizant directors face a substantial likelihood of liability from the potentially improper payments or were not independent.  They do not.[3]

### A.  Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for a Breach of Fiduciary Duty.

Plaintiffs allege that the Cognizant directors "would expose themselves to significant liability" if they "were to bring a suit on behalf of Cognizant to recover damages sustained as a result of . . . misconduct."  (Compl. ¶ 85.)  The Cognizant directors are exculpated from liability for violations of the duty of care.  (Cognizant Certificate of Incorporation, Ex. E at Art. X.)   See also 8 Del. Code. Ann. § 102(b)(7).  Therefore, the Cognizant directors may not be held liable at all, much less face "significant liability" (Compl. ¶ 85), unless Plaintiffs plead particularized facts as to each individual director showing "breaches of the duty of loyalty or

---

[3] For the same reasons described in Sections I.A, I.B, I.C, and I.D, Plaintiffs also fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

actions or omissions not in good faith or that include intentional misconduct or a knowing violation of the law," Citigroup, 964 A.2d at 124.  Plaintiffs do not.

### 1.   Plaintiffs Do Not Adequately Allege a Caremark Claim – "Possibly the Most Difficult Theory in Corporation Law."

Plaintiffs allege a "failure of oversight," or Caremark, claim.  (Compl. ¶ 38.)

Specifically, Plaintiffs plead:

- "Had Defendants exercised the diligence required by their fiduciary duties of candor, loyalty, and good faith and investigated, they would have discovered . . . that [Coburn] and [Schwartz] and other members of senior management had been, since 2012, engaged in a bribery scheme in India designed to unlawfully secure business advantages for the Company."  (Id. ¶ 7.)

- "[I]n breach of their fiduciary duties, the Defendants materially falsely and misleadingly stated that Cognizant had performed a thorough audit of the Company's anti-corruption compliance and that there were no incidents of corruption reported in 2014 and 2015."  (Id. ¶ 8; see also

- ████████████████████████████████████████████

Since Plaintiffs' theory of liability turns on a Caremark claim, Plaintiffs face the highest possible hurdle in establishing that any director – much less a majority of them – is exposed to a substantial likelihood of liability.  Delaware courts "give[] deference to boards and [have] dismissed Caremark cases even when illegal or harmful company activities escaped detection, when the plaintiffs have been unable to plead that the board failed to make the required good faith effort to put a

reasonable compliance and reporting system in place."  <u>Marchand v. Barnhill</u>, 212 A.3d 805, 809, 821 (Del. 2019).  When a plaintiff alleges a "failure of oversight," the complaint may survive a motion to dismiss only by pleading specific facts showing that (1) the directors utterly failed to implement a reporting or information system or (2) having implemented such a system, the directors consciously failed to monitor or oversee its operations.  <u>Stone</u>, 911 A.2d at 370.

Plaintiffs themselves concede that they must plead "bad faith" through the "utter failure to implement a monitoring system that would report non-compliance" or "the conscious and willful disregard of risks" raised by that monitoring system. (Compl. ¶ 38.)  Yet there are absolutely no such allegations here, let alone particularized ones.  Rather, Plaintiffs' own allegations, ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████[4]

---

[4] <u>Marchand</u> – which Plaintiffs cite in their Complaint – underscores the point. (Compl. ¶ 38.)  There, the Delaware Supreme Court found that the complaint adequately pleaded a <u>Caremark</u> claim because the complaint alleged particularized facts showing a "dearth of any board-level effort at monitoring" and "yellow and red flags about food safety [that] were presented to management."  <u>Marchand</u>, 212 A.3d at 809.  Plaintiffs do not and cannot plead anything like that. ████████████████ ████████████████████  Coburn and Schwartz have been charged with actively concealing the potentially improper payments from Cognizant; and Plaintiffs concede that, as soon as the Board learned of the potentially improper payments, it acted swiftly and decisively by conducting an internal investigation, self-reporting

a.    **Plaintiffs' Complaint** ███████████████████
███████████████ **That Cognizant's Board
Implemented Internal Controls.**

The Complaint concedes that (1) "Cognizant adopted a plethora of formal

policies and policy statements regarding anti-corruption and business ethics"

(Compl. ¶ 53), ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ Those concessions are not surprising.

The DOJ declined to prosecute Cognizant in part because of "the existence and

effectiveness of [Cognizant's] pre-existing compliance program." (Declination

Letter, Ex. A at 2.)

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

to the DOJ and SEC, and cooperating fully with both agencies' investigations. (See
supra at 3, 7-9.)

17

██████████████████████████████████████████████

██████████████  ████  ██████████████  ██████  ████   ████  ██  ████  ██████

██████████████████

Therefore, Plaintiffs do not and cannot plead facts showing that the Cognizant directors utterly failed to implement a reporting or information system. Indeed, the Complaint ███████████████████████████████ just the opposite.

**b.    Plaintiffs' Complaint** ████████████████████████ **That Cognizant's Board Did Not Consciously Disregard Red Flags.**

"Where, as here, plaintiffs rely on the second basis for a <u>Caremark</u> claim" – <u>i.e.</u>, that the directors consciously failed to monitor or oversee internal controls – "a complaint must allege (1) that the directors knew or should have known that the corporation was violating the law, (2) that the directors acted in bad faith by failing to prevent or remedy those violations, and (3) that such failure resulted in damage to the corporation." <u>In re Qualcomm Inc. FCPA Stockholder Derivative Litig.</u>, C.A. No. 11152, 2017 WL 2608723, at *2 (Del. Ch. June 16, 2017) (internal quotation marks omitted). To satisfy this standard, Plaintiffs must plead specific facts showing that six Cognizant directors acted in "conscious disregard" of a known duty or engaged in intentional misconduct, <u>Stone</u>, 911 A.2d at 370, by, for example, "ha[ving] clear notice of serious . . . irregularities and simply [choosing] to ignore them," <u>Guttman v. Huang</u>, 823 A.2d 492, 507 (Del. Ch. 2003). "Simply alleging

that a board incorrectly exercised its business judgment and made a wrong decision in response to red flags . . . is insufficient to plead bad faith." Qualcomm, 2017 WL 2608723, at *3 (internal quotation marks omitted).

**First**, the Complaint does not plead facts showing that Cognizant's Board knew or should have known about the potentially improper payments. Indeed, Plaintiffs do not identify any "red flags" showing that Cognizant's Board knew about the potentially improper payments before commencing the internal investigation. Nor could they. The DOJ found that Cognizant disclosed the potentially improper payments "within two weeks of the Board learning of the criminal conduct." (Declination Letter, Ex. A at 2.) See Strong ex rel. Tidewater, Inc. v. Taylor, 877 F. Supp. 2d 433, 451 (E.D. La. 2012) (finding that a shareholder derivative complaint failed to allege bad faith where the "directors voted and voluntarily initiated an FCPA investigation and advised the federal government of their violations before the government even suspected any violations").

**Second**, the Complaint does not plead facts showing that Cognizant's Board acted in bad faith by failing to prevent or remedy the potentially improper payments.

███████████████████████████████████████████████

███████████████████████

- ███████████████████████████████████████



"[T]he question is not whether [the] board adopted **effective** . . . controls" because "a board's efforts can be ineffective, its actions obtuse, its results harmful to the corporate weal, without implicating bad faith." Okla. Firefighters Pension & Ret. Sys. v. Corbat, C.A. No. 12151, 2017 WL 6452240, at *17 (Del. Ch. Dec. 18, 2017) (emphasis in original). For example, in Corbat, the Delaware Chancery Court held that a complaint failed to plead a Caremark claim even where a bank's internal audit department issued **22 reports** finding that the bank "was suffering from 'Insufficient Assurance' in its AML control environment." Id. at *15.



Plaintiffs do not and cannot state a <u>Caremark</u> claim. ██████████████████████

- 



Courts regularly dismiss shareholder derivative complaints where, ████



The same is true here.  (See supra at 18-23.)

Tellingly, Plaintiffs do not make any particularized allegations showing what each (or any) Cognizant director "actually knew" or "how the [directors] were reckless or negligent for failing to act in the face of these 'red flags.'"  Richardson v. Ulsh, Civ. A. No. 06–3934, 2007 WL 2713050, at *12 (D.N.J. Sept. 13, 2007). There are no allegations identifying specific communications, conversations, documents, meeting minutes, or anything else reflecting any awareness of the potentially improper payments by any director.  See, e.g., Guttman, 823 A.2d at 498-99, 501, 503.  Instead, there are only generalized, conclusory allegations of

"fiduciary failures" by directors (either as members of the Board or as members of certain Board committees).  (Compl. ¶ 72.)  Such boilerplate allegations have been uniformly rejected by courts as inadequate to satisfy the pleading requirements to excuse demand.  See, e.g., Postorivo v. AG Paintball Holdings, Inc., Civ. A. Nos. 2991, 3111, 2008 WL 553205, at *6 (Del. Ch. Feb. 29, 2008) (dismissing shareholder derivative claims where the "[c]omplaint alleges nothing close to the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility").  As the Delaware Supreme Court has made clear: "A prolix complaint larded with conclusory language, like the Complaint here, does not comply with the[] fundamental pleading mandates" of Rule 23.1.  Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000).

To the extent that Plaintiffs attempt to cast their Caremark claim as a disclosure claim, the result is the same.  "Claims alleging that directors caused or allowed corporate misstatements to be made must meet the Caremark standard." Brautigam v. Blankfein, 8 F. Supp. 3d 395, 405 (S.D.N.Y. 2014). ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

Any disclosure claim by Plaintiffs does not meet the <u>Caremark</u> standard. Plaintiffs do not plead facts showing that the Cognizant directors were involved in the preparation of any false or misleading statements. ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ (<u>See also</u> <u>infra</u> at 28-30.)  Plaintiffs also do not "plead particularized factual allegations that support the inference that the disclosure violation was made in bad faith, knowingly or intentionally." <u>Citigroup</u>, 964 A.2d at 132 (internal quotation marks omitted).  As described above, Plaintiffs do not adequately allege that the Cognizant directors knew of the potentially improper payments or acted in bad faith by failing to monitor the effectiveness of Cognizant's anti-corruption/bribery controls.  (<u>See</u> <u>supra</u> at 18-25.)  <u>See also</u> <u>In re Camping World Holdings, Inc. Stockholder Derivative Litig.</u>, C.A. No. 2019-0179-LWW, 2022 WL 288152, at *14 (Del. Ch. Jan. 31, 2022) (dismissing a disclosure claim challenging statements in "public filings, press releases, and earnings call transcripts" about the integration of assets purchased at a

bankruptcy auction because, "for some of the challenged statements, . . . the Complaint lacks any allegation of involvement by the outside directors" and "[t]here are no particularized allegations providing that the directors learned about major problems with the integration process sooner").

Ultimately, Plaintiffs rest their claims on the allegation that the directors served on Cognizant's Board at the time that the potentially improper payments were discovered.  That is not enough to show that demand is excused.  "[T]he mere fact that a board was responsible for oversight at the time the alleged wrong-doing occurred is insufficient to establish demand futility."  In re Adolor Corp. Derivative Litig., Civ. No. 04–3629, 2009 WL 1325738, at *7 (E.D. Pa. May 12, 2009); Strong, 877 F. Supp. 2d at 453 (allegations that directors acquired knowledge of the company's lack of internal controls and illegal activities when they assumed their positions were "not enough to create a reasonable doubt in th[e] Court's mind that any one of [them] was interested, biased, faced a substantial likelihood of liability or was non-independent").  If simply naming all of the directors as defendants satisfied the demand requirement, then the requirement would be eviscerated.  See, e.g., Wood v. Baum, 953 A.2d 136, 142-43 & n.19 (Del. 2008); Rattner v. Bidzos, No. Civ. A. 19700, 2003 WL 22284323, at *12 (Del. Ch. Oct. 7, 2003).[5]

---

[5] In addition, courts have recognized that directors who are not named defendants in an accompanying class action face a lesser risk of liability.  See, e.g., Ji v. Van

In short, "this case is like a number of derivative cases brought in Delaware courts that have been dismissed because they seek to equate a bad outcome with bad faith." King ex rel. Cephalon Inc. v. Baldino, 409 F. App'x 535, 538 (3d Cir. 2010) (internal quotation marks omitted) (affirming a dismissal based on a failure to plead that demand was excused where the allegations were "framed in rote, conclusory language" and did not "identify which individual director defendants breached his or her fiduciary duties, and when those duties were breached"); see also Guttman, 823 A.2d at 503.

### 2. Plaintiffs Do Not Adequately Allege That Service on Board Committees Creates a Substantial Likelihood of Liability for a Breach of Fiduciary Duty.

Plaintiffs allege that Defendants Abdalla, Breakiron-Evans, Chadwick, Fox, Klein, Mackay, Patsalos-Fox, and Wendel served on the Audit Committee and/or the Governance Committee of Cognizant's Board. (Compl. ¶¶ 88, 89.)  In particular, Plaintiffs further allege that Audit Committee members face a substantial likelihood of liability because they "reviewed and approved" various Cognizant SEC filings (see, e.g., id. ¶ 88) and that Governance Committee members face a substantial

---

Heyningen, No. CA 05–273, 2006 WL 2521440, at *10 (D.R.I. Aug. 29, 2006). None of the outside Cognizant directors was named in the accompanying securities class action complaint here; and the only Cognizant director who was named, Defendant D'Souza (who was named as CEO), was dismissed from that case years ago.  In re Cognizant Tech. Sols. Corp. Sec. Litig., No. 16-cv-06509, 2018 WL 3772675, at *36 (D.N.J. Aug. 8, 2018).

likelihood of liability because they "were responsible for the oversight of Cognizant's compliance with anti-corruption and insider trading laws" (id. ¶ 89).

Identifying responsibilities of Board committees does not show that any committee members face a substantial likelihood of liability. The Delaware Supreme Court has held that service on a board committee does not give rise to a substantial likelihood of liability. Wood, 953 A.2d at 142 (the assertion that "membership on the Audit Committee is a sufficient basis to infer the requisite scienter" is "contrary to well-settled Delaware law"); see In re Chemed Corp. S'holder Derivative Litig., Civ. A. No. 13-1854, 2015 WL 9460118, at *22 (D. Del. Dec. 23, 2015), report and recommendation adopted sub nom. KBC Asset Mgmt. NV v. McNamara, Civ. Action No. 13-1854, 2016 WL 2758256 (D. Del. May 12, 2016); Desimone v. Barrows, 924 A.2d 908, 943 (Del. Ch. 2007).

Plaintiff may not simply list a committee's membership, enumerate its duties, and conclude that its members face a substantial likelihood of liability because they must not have fulfilled those duties if the potentially improper payments were made at the same time. Indeed, Plaintiffs' "argument amounts to a claim that by virtue of their position on the [Board] Committee, the . . . outside directors should have known the actual state of affairs." Ji, 2006 WL 2521440, at *12. Plaintiffs "cannot rely on the directors' statutory duties to fill in the[] deficiencies in the particularity of [their] allegations, or, effectively, to allege that what might have happened in law must have

happened in fact." In re Computer Scis. Corp. Derivative Litig., No. CV 06-05288, 2007 WL 1321715, at *6 (C.D. Cal. Mar. 26, 2007).  Moreover, the actions of the Audit Committee in this case show that those Defendants did, in fact, fulfill their duties by investigating the potentially improper payments.  As the Complaint admits, the Audit Committee oversaw an internal investigation into the potentially improper payments, voluntarily disclosed the potentially improper payments to the DOJ and SEC, and cooperated fully with those agencies' investigations.  (Compl. ¶ 66.)

### 3.    Plaintiffs Do Not Adequately Allege That Directors' Stock Sales Create a Substantial Likelihood of Liability for a Breach of Fiduciary Duty.

Plaintiffs allege that seven of the Cognizant directors – Defendants Breakiron-Evans, D'Souza, Fox, Klein, Mackay, Narayanan, and Wendel – sold Cognizant stock at artificially inflated prices.  (Id. ¶ 11.)  In the absence of particularized allegations that a selling director acted with fraudulent intent, sales of company stock do not suggest that a director faces a substantial likelihood of liability for insider-trading-based breaches of fiduciary duty.  See Guttman, 823 A.2d at 503-05.

At a minimum, Plaintiffs must allege that the sales of Cognizant stock by those directors were suspicious – i.e., "dramatically out of line with prior trading practices" at times calculated to maximize . . . personal benefit.  Stiegele ex rel. Viisage Tech., Inc. v. Bailey, C.A. No. 05–10677, 2007 WL 4197496, at *12 (D. Mass. Aug. 23, 2007) (internal quotation marks omitted); see In re NutriSystem, Inc.

Derivative Litig., 666 F. Supp. 2d 501, 517-18 (E.D. Pa. 2009) (holding that the plaintiffs failed to allege that the defendants' trades were inconsistent with their prior trading history).

For example, in Stiegele, the court dismissed the complaint because it did not plead any "allegations permitting a reasonable inference of scienter" and, specifically, allegations of what nonpublic information each director possessed at the time of the stock sales or how the directors learned such information. 2007 WL 4197496, at *9-10, *12-14. Similarly, in Ji, the court dismissed the complaint because it did not plead particularized allegations of scienter but alleged merely that the directors "knew the adverse non-public information that was materially different than existed in the marketplace." 2006 WL 2521440, at *11 (internal quotation marks omitted). For the same reasons, this Court should dismiss Plaintiffs' allegations that Cognizant directors engaged in "unlawful insider trading . . . based on adverse material non-public information." (Compl. ¶ 77.)[6]

---

[6] In addition, Defendants D'Souza and Klein sold all of their shares of Cognizant stock pursuant to 10b5-1 plans. See D'Souza Forms 4, Ex. N; Klein Form 4, Ex. O. "[T]he presence of a trading plan rebuts an inference of scienter and supports the reasonable inference that stock sales were pre-scheduled and not suspicious." Stiegele, 2007 WL 4197496, at *13.

### 4.   Plaintiffs Do Not Adequately Allege That Cognizant's Repurchase Program Creates a Substantial Likelihood of Liability for a Breach of Fiduciary Duty.

To the extent that Plaintiffs allege that the Cognizant directors face a substantial likelihood of liability for approving Cognizant's repurchase of shares on the open market at allegedly inflated prices (Compl. ¶¶ 10, 76), the Cognizant directors are insulated from liability for the approval of Cognizant's repurchase program by Cognizant's exculpation provision (see supra at 14). See also Catholic Med. Mission Bd. v. Ritter, Nos. 2:08–cv–00485P, 2:08–cv–00550, 2008 WL 11377666, at *5 (N.D. Ala. Nov. 4, 2008) ("Board members would not face individual liability for [approving the stock repurchase] under Regions' Charter's exculpatory clause.").

Even if the Cognizant directors were not insulated from liability, Plaintiffs would have to allege that the directors "knew or should have known that the company's stock was artificially inflated" at the time that they approved the repurchase program. Ritter, 2008 WL 11377666, at *5; see Nutrisystem, 666 F. Supp. 2d at 512 (dismissing a stock buyback claim because the plaintiff failed to plead particularized facts that "Nutrisystem's stock price was artificially inflated at the time of the buybacks or that the directors knew or should have known of [a competitor]'s eventual impact"). Plaintiffs do not allege that any of the Cognizant directors knew or should have known that Cognizant's stock price supposedly was

artificially inflated due to the potentially improper payments (or otherwise).  (See supra at 30-31.)[7]

**B.     Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Corporate Waste.**

Plaintiffs allege that Defendants "wasted Cognizant's valuable corporate assets by, among other things, causing the Company to pay improper compensation, including cash, fees, stock awards, and other compensation, to themselves and other Cognizant insiders who breached their fiduciary duties of loyalty, candor, and good faith owed to Cognizant.  Cognizant received no consideration from these improper payments."  (Compl. ¶ 102.)  Such allegations do not adequately allege that any of the Cognizant directors, much less a majority of the Board, faces a substantial likelihood of liability for corporate waste.

To state a claim for corporate waste, Plaintiffs must allege "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."  Brehm, 746 A.2d at 263

---

[7] To the extent that Plaintiffs allege that the Cognizant directors face a substantial likelihood of liability because they did not bring claims against Coburn and Schwartz (Compl. ¶¶ 87, 93-95) – which, in turn, supposedly excuses Plaintiffs' failure to make a demand on the Cognizant directors to bring those claims – such circular allegations are wholly inadequate.  None of the cases cited by Plaintiffs holds that directors face a substantial likelihood of liability, let alone that demand is excused, because the directors did not bring the claims that the plaintiffs seek to assert on behalf of the company.  (See id. ¶¶ 93-95.)

(citations and internal quotation marks omitted); see also Qualcomm, 2017 WL 2608723, at *5.  **First**, Plaintiffs do not adequately allege that the Cognizant directors face a substantial likelihood of liability for "breach[ing] their fiduciary duties of loyalty, candor, and good faith owed to Cognizant."  (See supra at 14-33.)

**Second**, Plaintiffs plead no facts showing that any compensation paid to the Cognizant directors was somehow "improper" or that Cognizant received "no consideration" from it.  The Cognizant directors "did not fail to perform any services for which they were paid.  Thus, Plaintiffs' "Complaint does not contain particularized facts giving rise to the inference that the board is not competent to decide whether to bring the claim alleged."  Qualcomm, 2017 WL 2608723, at *5 (dismissing claims for breach of fiduciary duty, corporate waste, and unjust enrichment because demand was not excused as to any of those claims); see also In re Walt Disney Co. Derivative Litig., 731 A.2d 342, 362 (Del. Ch. 1998) (similar), aff'd in part and rev'd in part on other grounds sub nom. Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

### C.    Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Unjust Enrichment.

Plaintiffs allege that Defendants "were unjustly enriched at the expense and to the detriment of Cognizant without justification" and seek disgorgement of "all profits, benefits and other compensation . . . from [Defendants'] wrongful conduct

and fiduciary breaches." (Compl. ¶¶ 104, 106.) Those allegations do not adequately allege that any of the Cognizant directors, much less a majority of the Board, faces a substantial likelihood of liability for unjust enrichment.

Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Nemec v. Shrader, 991 A.2d 1120, 1130 (Del. 2010) (internal quotation marks omitted). Delaware courts "'frequently treat[] duplicative fiduciary duty and unjust enrichment claims in the same manner when resolving a motion to dismiss.'" See, e.g., Gamco Asset Mgmt., Inc. v. iHeartMedia, Inc., C.A. No. 12312, 2016 WL 6892802, at *19 (Del. Ch. Nov. 29, 2016) (quoting Frank v. Elgamal, C.A. No. 6120, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014)). "[I]f the Court dismisses a fiduciary duty claim for failure to state a claim, then it very likely also dismisses a duplicative unjust enrichment claim." Frank, 2014 WL 957550, at *31.

On its face, Plaintiffs' unjust enrichment claim is wholly duplicative of their breach of fiduciary duty claim. Both turn on Defendants' alleged "wrongful conduct and fiduciary breaches." Therefore, for the same reasons that Plaintiffs do not adequately allege that the Cognizant directors face a substantial likelihood of liability for breach of fiduciary duty (see supra at 14-33), Plaintiffs do not adequately allege that the Cognizant directors face a substantial likelihood of liability for unjust

enrichment, see, e.g., Taylor v. Kissner, 893 F. Supp. 2d 659, 674 (D. Del. 2012) (dismissing an unjust enrichment claim because the plaintiff "has not properly alleged any breach of fiduciary duty or any other theory providing a factual basis to conclude that the compensation received by each Defendant was paid without justification").

### D. Plaintiffs Do Not Adequately Allege That Any Director, Much Less a Majority of the Board, Faces a Substantial Likelihood of Liability for Contribution and Indemnification.

Plaintiffs bring claims against Coburn and Schwartz – not the Cognizant directors – for contribution and indemnification "based on the material roles played by Defendants Coburn and Schwartz in the Company's bribery scheme in India and non-disclosures regarding Cognizant's anti-corruption controls and legal compliance." (Compl. ¶¶ 109, 114.) By the Complaint's very terms, the Cognizant directors do not face any possibility of liability, let alone a substantial likelihood of liability, for those claims. See In re Boeing Co. Derivative Litig., C.A. No. 2019-0907, 2021 WL 4059934, at *36 (Del. Ch. Sept. 7, 2021) (dismissing claims brought against only defendant officers because the plaintiffs failed to plead that demand was excused as to those claims).

### E.   Plaintiffs Do Not Adequately Allege That the Cognizant Directors Were Not Otherwise Disinterested and Independent.

#### 1.   Plaintiffs Do Not Adequately Allege that Defendants D'Souza and Narayanan Were Not Disinterested and Independent Based on Their Status under NASDAQ Rules.

Plaintiffs allege that Directors D'Souza and Narayanan were not disinterested and independent because they did not satisfy the NASDAQ Stock Market LLC rules for independence.  (Compl. ¶ 91.)  Courts applying Delaware law have held that "being deemed 'not independent' for Nasdaq purposes does not bear upon independence for demand futility purposes."  In re Synchronoss Techs., Inc. Sec. Litig., Civ. Action No. 17-7173, 2021 WL 1712394, at *12 (D.N.J. Apr. 30, 2021) (internal quotation marks omitted), appeal dismissed, No. 21-2055, 2021 WL 5984927 (3d Cir. Dec. 13, 2021).  The Complaint must "precisely identif[y] why the Board made the determination that [Directors D'Souza and Narayanan were] not independent, such that the Court can assess how that factor impacts the demand futility analysis."  Id.

Plaintiffs make no such allegations.  **First**, Plaintiffs allege that Cognizant's 2016 Proxy disclosed that Defendants D'Souza and Narayanan were not disinterested and independent based on the NASDAQ definition.  (Compl. ¶ 91.) That "is not, alone, sufficient to find that [Directors D'Souza and Narayanan] would not be capable of acting in a disinterested fashion in the face of demand." Synchronoss, 2021 WL 1712394, at *12.  **Second**, Plaintiffs allege that Defendant

D'Souza was not disinterested and independent because he was the CEO of Cognizant. (Compl. ¶ 91.) Under Delaware law, however, "'merely being employed by a corporation is not, by itself, sufficient to create a reasonable doubt as to the independence of a director,' for demand futility purposes." Synchronoss, 2021 WL 1712394, at *12 (quoting Nutrisystem, 666 F. Supp. 2d at 515); see Jacobs v. Yang, No. Civ. A. 206, 2004 WL 1728521, at *4-5 (Del. Ch. Aug. 2, 2004) (finding that a CEO who stood to lose $17 million worth of options if his employment was terminated was disinterested and independent for demand futility purposes), aff'd, 867 A.2d 902 (Del. 2005).

### 2. Plaintiffs Do Not Adequately Allege that Defendants D'Souza and Weissman Were Not Disinterested and Independent Based on Their Business Relationships.

Plaintiffs allege that Defendants D'Souza and Weissman were not disinterested and independent because they "have significant business and longtime friendships with Defendant Coburn and each other," based solely on the fact that they "worked extensively" together at Cognizant's predecessor's parent company in the mid-1990s. (Compl. ¶ 92.) Plaintiffs speculate that those relationships rendered Defendants D'Souza and Weissman unable to consider a demand as disinterested and independent directors. Such allegations do not come anywhere close to satisfying the requirements of Delaware law.

As the Delaware Supreme Court has held: "Mere allegations that [defendants] move in the same business and social circles, or a characterization that they are close friends, is not enough to negate independence for demand excusal purposes." Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1051-52 (Del. 2004).  When challenging a director's independence, a plaintiff must put forward "allegations that raise a reasonable inference that a given director is dominated through a close personal or familial relationship or through force of will, or is so beholden to an interested director that his or her discretion would be sterilized."  In re INFOUSA, Inc. S'holders Litig., 953 A.2d 963, 985 (Del. Ch. 2007) (internal quotation marks omitted).  "The naked assertion of a previous business relationship is not enough to overcome the presumption of a director's independence." Orman v. Cullman, 794 A.2d 5, 27 (Del. Ch. 2003).

Plaintiffs' allegations do not show that Defendants D'Souza and Weissman were not disinterested or independent. Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d 963 (Del. Ch. 2000), is on point.  There, the court held that allegations of a "long-standing 15-year professional and personal relationship" between a director and the Chairman of the Board and CEO did not successfully challenge the director's independence.  Id. at 980-81.  The court concluded that such allegations, without more, "fail[ed] to raise a reasonable doubt that [the director] could not exercise his independent business judgment in approving the transaction."  Id.  Here, Plaintiffs'

far weaker allegations do not overcome the presumption that Defendants D'Souza and Weissman were disinterested and independent.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint with prejudice.

Dated: February 14, 2022                    Respectfully submitted,


                                            s/ Charles A. Brown
                                            Daniel Roeser (*pro hac vice*)
                                            Charles A. Brown
                                            **GOODWIN PROCTER LLP**
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, New York 10018
                                            Tel.: 212.813.8800
                                            Fax: 212.355.3333
                                            droeser@goodwinlaw.com
                                            cbrown@goodwinlaw.com

                                            *Attorneys for Defendants Zein Abdalla,*
                                            *Maureen Breakiron-Evans, Jonathan*
                                            *Chadwick, Ramakrishnan Chandrasekaran,*
                                            *Francisco D'Souza, John N. Fox, Jr., John E.*
                                            *Klein, Leo S. Mackay, Jr., Karen*
                                            *McLoughlin, Rajeev Mehta, Lakshmi*
                                            *Narayanan, Michael Patsalos-Fox, Robert E.*
                                            *Weissman, and Thomas M. Wendel and*
                                            *Nominal Defendant Cognizant Technology*
                                            *Solutions Corporation*